**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Jason Westerfield,** | ) | **CASE NO. 07 CV3518** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| **United States of America, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

### INTRODUCTION

This matter is before the Court upon the Motion of Defendant DEA Special Agent Robert Cross for Summary Judgment with Respect to *Bivens* Claims (Doc. 51), Officer Ansari's Motion for Summary Judgment (Doc. 52), Motion for Summary Judgment filed by defendants Larry Faith, Chuck Metcalf and Matt Mayer (Doc. 53), Defendant Lee Lucas' Motion for Summary Judgment (Doc. 55) and Motion of the United States, as substituted defendant, to Dismiss Common Law Tort Claims or, in the alternative, Motion for Summary Judgment with Response to Common Law Tort Claims (Doc. 56).  This case arises out of the government's use of an informant and plaintiff's subsequent arrest and trial for drug crimes.  For the reasons that follow,

1

the motions are GRANTED.

**FACTS**

Plaintiff, Jason Westerfield, filed this lawsuit against defendants, the United States of America, Drug Enforcement Agents ("DEA") Lee Lucas and Robert Cross, Richland County, Richland County Sheriff's Officers Chuck Metcalf, Matt Mayer and Larry Faith, (collectively, "Richland County Defendants"), City of Mansfield[1], and Jamal Ansari alleging wrongdoing in connection with an investigation concerning the sale of drugs in the Mansfield area.

On December 31, 2004, the body of Timothy Harris was discovered in Richland County. It was believed that the death was drug related, and plaintiff became a suspect in Harris's death. Thereafter, the Richland County Sheriff's Office began an ongoing investigation into the area's drug trade. In March of 2005, defendant Metcalf organized two controlled drug buys from plaintiff. Jarrell Bray, a confidential informant, was used to make the controlled drug buys. Prior to the buys, Richland County personnel searched Bray's vehicle. He was then followed to the buy location. An effort to record the buy was also made. After completion of the buy, Bray was followed to a predetermined location, whereupon Richland County law enforcement officers again searched his vehicle. According to the affidavits provided by the Richland County Defendants, Bray had previously provided reliable information to the sheriff's office. In addition, each defendant was provided additional information regarding Bray and none had any reason to doubt Bray's veracity.

---

[1] Plaintiff voluntarily dismissed the City of Mansfield. In addition, plaintiff voluntarily dismissed the United States of America. The United States, however, was substituted in place of the individual federal defendants with respect to the state law claims.

2

On March 16, 2005, plaintiff was arrested and incarcerated on charges unrelated to the drug investigation. Within a week of his arrest, he made a telephone call to a former roommate and told her to take his belongings and give them to Jacquoia Ginn. Thereafter, a search warrant was executed at Ginn's residence and certain drug paraphernalia was discovered. It appears that plaintiff has been incarcerated since his arrest.[2]

In August of that year, the Richland County Sheriff's Office contacted the DEA and requested assistance with their drug investigation. None of the Richland County defendants made the decision to contact the DEA. Nor did they make any recommendations regarding which federal charges to file against plaintiff.

Defendant Lucas was the Acting Group Supervisor for the Cleveland Resident Office at the time the DEA became involved in the Richland County investigation. Defendant Cross joined the Cleveland office of the DEA one month prior to the commencement of the joint investigation. Defendant Ansari is a member of the City of Cleveland Division of Police. He was deputized as a DEA Task Force Officer. According to his affidavit, he had no involvement with the investigation, arrest or prosecution of plaintiff.

Subsequently, on March 15, 2006, a federal grand jury returned a 55-count superseding indictment against numerous defendants, including plaintiff. Plaintiff was charged with conspiracy to distribute crack and cocaine from the winter of 2004 through November 8, 2005. In addition, plaintiff was charged with seven counts related to possession with the intent to distribute crack on specific dates. Two of those counts stem from the recovery of drug paraphernalia at Ginn's residence. Other than the conspiracy count, all of the charges filed

---

[2] Plaintiff pled guilty to being a felon in possession of a firearm.

against plaintiff predate the DEA's involvement in the investigation.  In addition, plaintiff was already incarcerated at the time the DEA began assisting the Richland County Sheriff's Office.

Plaintiff was convicted by a jury for one count of possession with intent to distribute crack cocaine.  This charge related to the discovery of drug paraphernalia at Ginn's residence.  Plaintiff was acquitted on five counts, including the conspiracy count, and the jury was unable to reach a verdict with respect to the two remaining counts.  Many of the other 22 defendants charged in the conspiracy were also convicted of charges stemming from the investigation.  Subsequently, Bray informed authorities that he had fabricated evidence during the investigation.  According to newspaper articles, many individuals involved in the investigation, including defendant Lucas, knew of and may have participated in the fabrication of evidence.  Plaintiff points out that many of his co-defendants were released from prison upon motion by the government.  Plaintiff, however, remains in prison and is currently challenging his conviction on appeal.  Because the charge for which he was convicted did not involve the use of Bray as an informant, he has not raised this issue in his criminal appeal.

Thereafter, plaintiff filed this lawsuit.  The complaint does not contain separately identifiable causes of action.  In appears, however, that plaintiff asserts claims for violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments.  Plaintiff further asserts claims for malicious prosecution and intentional infliction of emotional distress.  In addition, plaintiff alleges that defendants Lucas and Cross subjected plaintiff to judicial proceedings without probable cause.  It appears that plaintiff alleges that defendants conspired to deprive plaintiff of his constitutional rights.  Plaintiff also alleges that Richland County maintained a policy permitting the constitutional violations and failed to train its employees.

4

Defendants move for summary judgment on the grounds of qualified immunity. Plaintiff opposes the motion.

**STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of*

*Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

## **ANALYSIS**

"The doctrine of qualified immunity shields government officials from liability, as well as from suit, so long as their official conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hardy v. Jefferson Community College*, 260 F.3d 671 (6th Cir. 2001) citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Sixth Circuit has explained:

> The Supreme Court has instructed that a qualified immunity inquiry generally entails two discrete analytical steps. As a threshold matter, we must ask whether the record, viewed most favorably to the plaintiff, establishes that 'the officer's conduct violated a constitutional right.' *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001); *see also Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). 'If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.' *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156. 'On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.' 533 U.S. at 201, 121 S.Ct. at 2156; *see also Burchett*, 310 F.3d at 942.

*Cherrington v. Skeeter*, 344 F.3d 631, 636 (6th Cir. 2003).

With regard to the question whether the right was clearly established, this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier*, 533 U.S. at 201. Further, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct

was unlawful in the situation he confronted." *Id*. at 202.

Therefore, this Court must first determine whether plaintiff has demonstrated the violation of a constitutionally protected right. Upon review of the parties' submissions, the Court finds that plaintiff fails in this regard. The essence of plaintiff's complaint is that defendants falsely implicated plaintiff in a drug conspiracy by fabricating evidence, tampering with evidence and withholding favorable evidence. He further alleges that Bray admitted that the drug buy between himself and plaintiff never occurred. With regard to the Richland County Defendants, each submits an affidavit indicating that there was no reason to doubt the veracity of Bray. Nor did any of these defendants have any reason to believe that Bray was fabricating evidence. They further aver that they were not involved in the decision to bring charges against plaintiff and did not testify before the federal grand jury. Two of the three did not testify at trial and each avers that all of the evidence was turned over to the federal officials. In addition, the Richland County defendants all aver that they did not attempt to influence any witnesses in plaintiff's case. Defendants Lucas and Cross both provide evidence that the DEA did not become involved in the investigation until after the controlled drug buys occurred. At the time their involvement began, plaintiff was already incarcerated. Lucas argues that the complaint does not fairly put him on notice of what actions he allegedly took in violation of plaintiff's constitutional rights. Regardless, he points out that he was not involved with Bray and that the use of Bray was handled by the Richland County Defendants. Because the DEA did not become involved in the investigation until after the controlled drug buys occurred, defendant Lucas was not involved in the arrest. Cross testifies that he did not participate in the investigation or arrest of plaintiff and did not testify before the grand jury or at trial. He further states that his

7

involvement was limited to attending proffers and preparing reports of what transpired at these meetings. He avers that he did not fabricate, destroy or withhold favorable evidence and did not coach any witness or manipulate testimony. Defendant Ansari avers that he had no involvement in plaintiff's case. Specifically, he states that he was not involved in the investigation, did not interview witnesses, handled no evidence, did not fabricate or withhold evidence and did not testify at plaintiff's criminal trial.

In response to defendants' evidence, plaintiff provides no admissible evidence. Instead, plaintiff relies on newspaper articles discussing the investigation into Bray's allegations. The articles, however, are hearsay evidence and are therefore inadmissible to support plaintiff's allegations. The only other document plaintiff submits consists of an affidavit from his attorney.

When faced with a properly supported motion for summary judgment, plaintiff may not rest solely on the allegations in his complaint. Rather, plaintiff must come forward with admissible evidence sufficient to create a genuine issue of material fact. *Skousen v. Brighton High School*, 305 F.3d 520 (6th Cir. 2002)(plaintiff may not rest on allegations in complaint to defeat a motion for summary judgment based on qualified immunity). The issue of qualified immunity is to be decided as early as possible in the course of litigation to ensure that government officials are not subjected to the expense and burdens of discovery. *Harlow v. Fitzgerald*, 457 U.S. 194, 818-19 (2001); *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Goad v. Mitchell*, 297 F.3d 497 (6th Cir. 2002). That being said, limited discovery may be appropriate where the complaint alleges the violation of a well-established constitutional right and the issue is whether the defendants, in fact, committed the alleged violation. *See, Crawford-El* 523 U.S. at 598. Nonetheless, when faced with a motion for summary judgment based on

qualified immunity, this Court may not delay ruling until after discovery. *See, Wallin v. Norman*, 317 F.3d 558, 563 (6th Cir. 2003)("This court has recently held that a district court's failure to rule on a motion for summary judgment until after discovery is complete was legal error."). Rather, the Court must rule on the motion based on the submission of the parties.

In this matter, plaintiff fails to come forward with any evidence supporting his claim. Plaintiff, does however, submit an affidavit from his counsel. In the affidavit, counsel states that she expects to obtain the following evidence: audiotapes, videotapes, deposition testimony, affidavits, police reports, reports from the DEA, grand jury testimony, witness statements and any other relevant evidence. Counsel also notes that this Court stayed discovery until after the resolution of the qualified immunity issue.

Although a party may invoke Rule 56(f) in response to a motion for summary judgment, the party supplying the affidavit must state why discovery is necessary. *Id*. *See also, Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). To fulfill Rule 56(f)'s requirements, plaintiff must "state with some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment." *Summers*, 368 F.3d at 887 (internal quotations omitted)(district court erred in determining that additional discovery was required before ruling on motion for summary judgment based on qualified immunity in absence of proper affidavit).

The affidavit submitted by plaintiff's counsel states only in very general terms the items plaintiff hopes to obtain. For example, counsel avers that she hopes to obtain "audiotapes, videotapes, deposition testimony, affidavits [and similar items]." These items, however, are commonly obtained in every discovery process. Plaintiff fails to identify any evidence specific

9

to this case that he believes will be obtained during discovery.  Moreover, there is no indication as to how the receipt of the general materials he does identify might help assist him in defeating defendants' summary judgment motions.  In addition, although this Court stayed discovery in this matter, plaintiff did not move the Court for particular discovery or indicate in the affidavit or otherwise, what specific discovery would be needed to defeat defendants' motions.  Moreover, plaintiff fails to attempt to point to any particular factual dispute that would require additional discovery.  Accordingly, in the absence of any evidence from plaintiff, the Court concludes that defendants are entitled to qualified immunity because plaintiff fails to adduce any facts demonstrating that defendants violated plaintiff's constitutional rights.  As such, summary judgment in favor of defendants is warranted with respect to plaintiff's claims for violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments.[3]

Having concluded that plaintiff's constitutional claims fail, the Court now turns to plaintiff's state law claims.  The United States moves to dismiss the tort law claims asserted against the federal defendants[4] on the grounds that plaintiff failed to exhaust his administrative

---

[3]  These claims are presumably asserted against the Richland County Defendants pursuant to 28 U.S.C. § 1983 and against the remaining defendants pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).

[4]  This Court granted the United States' request to be substituted in place of the individual federal defendants with respect to the tort claims asserted against them.  The request was made pursuant to Section 2679(d)(1) of the Westfall Act, 28 U.S.C. §2679(d)(1).  Plaintiff argues that the Court has discretion to permit discovery into whether the certification by the attorney general indicating that the defendants acted within the scope of their authority was proper.  Plaintiff himself, however, expressly alleges that the defendants acted within the scope of their authority.  *See*, Complaint at ¶ 31.  Accordingly, the Court declines to "revisit" its

remedies prior to the institution of this lawsuit. Plaintiff argues that this Court should not dismiss the claims because plaintiff can simply refile them immediately. These claims would then likely get transferred back to this case. Thus, accepting defendant's argument would amount to nothing more than a procedural hurdle. Upon review, the Court agrees with the government. The parties do not dispute that plaintiff filed this lawsuit prior to exhausting his administrative remedies. The parties further do not appear to dispute that, through administrative inaction, plaintiff has now exhausted his administrative remedies. Yet, it is well settled that under the Federal Tort Claims Act, administrative remedies must be exhausted *prior* to the commencement of the lawsuit. *See, McNeil v. United States*, 508 U.S. 106, 110-13 (1993). Exhaustion occurring *after* the filing of the lawsuit does not satisfy this jurisdictional requirement. *Id*. As such, the Court lacks jurisdiction over the state law claims asserted against the United States.

Having disposed of all of the federal claims in this case, the Court declines to exercise supplemental jurisdiction over the state law claims plaintiff asserts against the Richland County defendants. *Valot v. Southeast Local School Dist. Bd. of Educ.*, 107 F.3d 1220 (6th Cir. 1997). Accordingly, these claims are dismissed.

**CONCLUSION**

For the foregoing reasons, the Motion of Defendant DEA Special Agent Robert Cross for Summary Judgment with Respect to *Bivens* Claims (Doc. 51), Officer Ansari's Motion for Summary Judgment (Doc. 52), Motion for Summary Judgment filed by defendants Larry Faith,

---

decision to substitute the United States as the proper party with respect to the tort claims.

11

Chuck Metcalf and Matt Mayer (Doc. 53), Defendant Lee Lucas' Motion for Summary Judgment (Doc. 55) and Motion of the United States, as substituted defendant, to Dismiss Common Law Tort Claims or, in the alternative, Motion for Summary Judgment with Response to Common Law Tort Claims (Doc. 56) are GRANTED.  Summary judgment with respect to the constitutional claims is GRANTED on the grounds of qualified immunity.  The state law claims are hereby DISMISSED.

      IT IS SO ORDERED.

        /s/ Patricia A. Gaughan  
        PATRICIA A. GAUGHAN  
        United States District Judge

Dated: 8/8/08