UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

_____
                                        :
JASON WESTERFIELD,                      :   CASE NO. 1:07-CV-03518
                                        :
                                        :
                                        :   JUDGE PATRICIA A.
                     Plaintiff,         :   GAUGHAN
                                        :
          v.                            :
                                        :
LEE LUCAS, et al.,                      :
                                        :
                                        :
                     Defendants.        :
_____:


**INDIVIDUAL FEDERAL DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO ADDITIONAL DISCOVERY FROM THEM PRIOR TO THE
<u>ISSUE OF QUALIFIED IMMUNITY BEING DECIDED</u>**

<u>Statement of Facts</u>

Defendants Lee Lucas, Jamaal Ansari and Robert Cross
submit this Memorandum of Law in response to Plaintiff
Jason Westerfield's Status Report Delineating Discovery
Needed Regarding the Issue of Qualified Immunity.  The
Sixth Circuit in <u>Westerfield</u> addressed the sufficiency of
Rule 56(f) affidavits submitted in opposition to motions
for summary judgment based upon qualified immunity that
were filed by the individual law enforcement defendants, a
number of whom are defendants in the present lawsuit.

1

Consistent with Judge Gaughan's decision, the Sixth Circuit held that the initial Rule 56(f) affidavit submitted by Westerfield's counsel was "inadequate."  However, the Sixth Circuit further held that the supplemental Rule 56(f) affidavit of Westerfield's counsel, submitted in support of motion for reconsideration after Judge Gaughan awarded summary judgment to the individual defendants on the basis of qualified immunity, was sufficiently detailed and particularized in light of the facts of the Mansfield investigation known at the time of the decision, to comply "with the spirit of Rule 56(f)."

As a result, the Sixth Circuit reversed and remanded Westerfield.  However, the Sixth Circuit specifically cautioned that:

> . . . on remand the district court may fashion a discovery order that is limited to the issue of qualified immunity, recognizing that the case law concerning qualified immunity makes clear that the doctrine exists to make certain that governmental officials who perform discretionary functions are protected from unsubstantial claims.  Westerfield at *6.

It is significant that the Sixth Circuit in Westerfield did not hold that Judge Gaughan's decision to stay discovery during the pendency of the briefing on the immunity issues presented in the lawsuit was in error.  It is equally significant that the Sixth Circuit in

_Westerfield_ did not hold that law enforcement defendants were foreclosed from obtaining summary judgment on the basis of absolute and/or qualified immunity at the pre-discovery stage of a _Bivens_/§1983 lawsuit.  To the contrary, the Sixth Circuit in _Westerfield_ specifically ruled that:

> . . . the trial courts are instructed to rule on such [qualified immunity] motions at the earliest opportunity . . . Nothing in our decision in this case should be construed as modifying that fundamental doctrine.  _Westerfield_ at *6.

Since the conclusion of the Lucas criminal trial, an extensive amount of discovery has been made available to the plaintiff to the point where the Sixth Circuit's decision in this matter has been rendered effectively moot. In particular, plaintiff has been provided with almost 4,000 pages of trial transcript from the Lucas criminal trial.  Also provided to him in the past several weeks were all of the trial exhibits admitted into evidence at the Lucas criminal trial, consisting of over 22,000 pages of documentary evidence.

These exhibits include, among other things, the entire internal files of the United States Attorneys Office in Cleveland, United States Drug Enforcement Administration, Richland County Sheriff's Office and the other law enforcement agencies involved in the Mansfield cases.  The

following categories of evidence has been provided to plaintiff on all of the Mansfield deals, including the several that plaintiff Westerfield was alleged to have been involved: all investigative reports of the undercover transactions and proffers of the Mansfield defendants, statements of Bray relating to some of the deals, including those relating to Westerfield, all audio and video recordings of the Mansfield transactions, as well as complete transcripts of these recordings.  Also included is the full transcript of the Nabors trial, after which Westerfield was acquitted by the jury of the drug charges.

In Plaintiff's Status Report Delineating Discovery Needed Regarding the Issue of Qualified Immunity, Westerfield not only seeks written discovery, apparently over and above the Lucas trial transcripts and 22,000 pages of trial exhibits he has already received, but also seeks to take the depositions of 13 individuals, including Jamal Ansari, Jerrell Bray, Dawn Brown, Robert Cross, Larry Faith, John Ferster, Lee Lucas, Matt Mayer, Charles Metcalf, Blas Serrano, Kimberly Thomas, Thomas Verhiley and Perry Wheeler.  In fact, all of these individuals, except Mr. Ansari, testified at length at the Lucas criminal trial, and plaintiff Westerfield already has a transcript of their testimony.  Indeed, these individuals testified at

4

the Lucas criminal trial to essentially the same facts and circumstances which plaintiff claims are relevant to his case.

## ARGUMENT

### PLAINTIFF WESTERFIELD IS ENTITLED TO NO ADDITIONAL DISCOVERY FROM DEFENDANT LUCAS PRIOR TO THE ISSUE OF QUALIFIED IMMUNITY BEING DETERMINED

Plaintiff's request for discovery over and above the plethora of material he has already received -- before qualified immunity motions are decided -- clearly runs afoul of the Sixth Circuit's persistent admonition  that qualified immunity issues should be decided at the earliest possible stage in the litigation, even before discovery begins.  Because qualified immunity constitutes an immunity from suit as well as from damages, a DEA agent who pleads a qualified immunity defense is entitled to have it decided before the case proceeds, even prior to the commencement of discovery.  See Siegert v. Gilley, 500 U.S. 266, 231 (1991); see also Mitchell v. Forsyth, 472 U.S. 511 (1985).

If the law at the time did not clearly establish that the officer's conduct would have violated the Constitution, the officer should not be subject to liability, or even the burden of litigation.  Brosseau v. Gaugen, 543 U.S. 194, 198 (2004), See Saucier v. Katz, 533 U.S. 194, 201 (2001)("we repeatedly have stressed the importance of

resolving immunity questions at the earliest possible stage
in litigation.")

In the Westerfield decision itself, the Sixth Circuit
admonished that any Order granting discovery should be
limited and strictly tailored to the issue of qualified
immunity.  That should be a simple matter in the case of
all of the federal defendants herein because their
involvement in the Mansfield cases did not commence until
September of 2005, more than six months _after_ the
controlled purchases between Jerrell Bray, the confidential
informant, and Westerfield occurred.  Bray allegedly
purchased drugs from Westerfield on February 15, March 12
and March 15, 2005.  Even if Bray lied to the RCSO officers
about these transactions and never actually bought drugs
from Westerfield, this deception could not have involved
the federal defendants because they did not join the
Mansfield investigation until August of 2005, when the DEA
registered Bray as an informant for the first time.
Moreover, a deal in early September of 2005 was DEA's first
involvement in any controlled buy utilizing Bray in
Mansfield.

Plaintiff Westerfield, in his brief seeking discovery
of the federal defendants, attempts to sidestep the fact
that the federal defendants could not possibly have been

6

involved in a scheme with Bray to frame him on drug deals in February or March of 2005 because they had no knowledge of, or any involvement in, those deals.  Instead, plaintiff Westerfield argues that because the federal defendants were involved in some generalized scheme to hide or conceal exculpatory evidence concerning Bray relating to other Mansfield defendants, it somehow impacts his constitutional rights in some undefined way.

Even if plaintiff Westerfield's constitutional rights were violated, they could not have been violated by any of the federal defendants.  They were not involved in the underlying criminal investigation or drug buys with Westerfield or the search warrant of the premises linked to him.  They did not become involved in the Mansfield drug conspiracy investigation until August of 2005, long after these drug buys with Westerfield and search of his premises occurred.  Nor did they have anything to do with Bray during the drug buys that led to Westerfield's arrest.  The operation involving Westerfield, including the use of informant Bray, was handled by the Richland County Sheriff's Office without any assistance at all from DEA.  Accordingly, given the limitations on discovery contemplated by the Sixth Circuit in anticipation of a qualified immunity motion, no additional discovery of the

individual federal defendants should be permitted in any form, particularly depositions.

Contrary to plaintiff Westerfield's suggestion in his request for broad discovery, Bivens or civil rights liability premised on Brady violations requires a direct nexus between the suppressed evidence and the guilt or innocence of the accused.  The suppressed evidence has to be "material exculpatory evidence," in the sense that it must be the kind of evidence that "could form a basis for exonerating the defendant."  Moldovan v. City of Warren, 573 F.3d 309, 342-43 (6th Cir. 2009).  Indeed, the Supreme Court in Strickler v. Greene, 527 U.S. 263, 281 (1999), held that "there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."  Westerfield cannot possibly meet that stringent test when the Brady material he has identified relates solely to other Mansfield defendants, not him.

Moreover, liability under Bivens is an individual rather than a collective concept.  In this regard, the Supreme Court and Sixth Circuit have consistently held that Bivens liability is limited to those officials who have participated in, or contributed to, violations of the

8

Constitution.  See e.g., Monell v. Dept. of Soc. Sys., 436
U.S. 658, 691-91 (1978);  Rizzo v. Goode, 423 U.S. 362,
371, 376-77 (1976); Gibson v. Matthews, 926 F.2d 532, 535
(6th Cir. 1991).  In the context of successfully opposing a
motion to dismiss, plaintiff need allege with particularity
that defendant was directly and personally responsible for
the alleged unlawful act, Williams v. Mehra, 135 F.3d 1105,
1114 (6th Cir. 1998); Leach v. Shelby County Sheriff, 891
F.2d 1241, 1246 (6th Cir. 1989); Hays v. Jefferson County,
668 F.2d 869, 872 (6th Cir. 1982); Jones v. City of
Memphis, 586 F.2d 622, 625 (6th Cir 1978), and that a
causal connection existed between that conduct and
plaintiff's injuries. Deaton v. Montgomery City, 989 F.2d
885, 889 (6th Cir. 1993); White v. Gerbitz, 892 F.2d 457,
463 (6th Cir. 1989).

In Rizzo v. Goode, 423 U.S. at 370-71, the Supreme
Court emphasized that §1983 permits the imposition of
liability "only for conduct which 'subjects, or causes to
be subjected' the complainant to a deprivation of a right
secured by the Constitution and laws."  In the
circumstances of that case, the Court held that no
liability under §1983 could be imposed on supervisory
personnel because "[a]s the facts developed, there was no
affirmative link between the occurrence of the various

9

incidents of police misconduct and the adoption of any plan or policy by petitioners expressly or otherwise showing their authorization or approval of such misconduct." <u>Id.</u> at 371.

Moreover, it is well settled in the Sixth Circuit and elsewhere that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983 or in <u>Bivens</u> actions.  <u>Turner v. City of Taylor</u>, 412 F.3d 629, 643 (6th Cir. 2005); <u>Johnson v. Glick</u>, 481 F.2d 1028, 1034 (2d Cir.), <u>cert. denied</u>, 414 U.S. 1033 (1973).

Moreover, a pleading fails to state a claim if the allegations are merely conclusory and lack factual specificity.  <u>Davis v. Michigan Dept. of Correction</u>, 746 F. Supp. 662, 667 (E.D. Mich. 1990), <u>citing</u> <u>Place v. Shepard</u>, 446 F.2d 1239, 1244 (6th Cir. 1971).  Damage claims against government officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must, instead, allege facts that show the existence of the asserted constitutional rights violation recited in the Complaint and what each defendant did to violate the asserted right. <u>Terrance v. Northville Regional Psychiatric Hosp.</u>, 286 F. 3d 834, 842 (6th Cir 2002).  So, in light of the foregoing

10

decisional authority, vague claims that Lucas may be involved in concealing exculpatory material with respect to Mansfield defendants other than Westerfield are unavailing to support the taking of discovery from him.

Although plaintiff is intentionally vague about his convictions in the Mansfield cases, even a cursory review of them demonstrates that no amount of discovery could ever produce the kind of Brady material that would make a difference in his convictions.  He was indicted twice in the Northern district of Ohio, first for being a convicted felon in possession of a firearm.  He pleaded guilty to that indictment and, after the district court concluded that he was subject to an enhanced sentence under the Armed Career Criminal Act ("ACCA"), he was sentenced to a term of imprisonment of 180 months.

While the first case was still pending, another federal grand jury returned a multi-defendant, 55-count indictment, naming Westerfield in 7 counts, alleging a conspiracy to possess with intent to distribute cocaine and cocaine base.  Following a jury trial, Westerfield was found guilty on one count, which charged him with possessing cocaine base with intent to distribute.  After finding Westerfield was subject to a sentencing enhancement as a career offender, the district court sentenced him to a

11

term of 360 months of imprisonment.  Both convictions were affirmed by the Sixth Circuit in United States v. Westerfield, 248 Fed. Appx. 315 (6th Cir 2008).

Unquestionably, the exculpatory material that existed with respect to plaintiff Westerfield on the drug conspiracy case was in fact turned over to his defense attorney, David Jack, Esq., prior to his trial in July of 2006.  Westerfield co-defendant and cousin, Tyron Brown, provided a proffer to the government on June 13, 2006, in anticipation of entering into a guilty plea and cooperation agreement with the government.  Following that proffer, Assistant United States Attorney Blas Serrano wrote Mr. Jack a letter on July 3, 2006, pursuant to his obligations under Brady v. Maryland, 373 U.S. 83, 87 (1963),  in which he stated in pertinent part:

> This is to confirm our recent conversation wherein we discussed the fact that during a proffer interview, Tyron Brown, stated that Mr. Westerfield was not the participant with with him in two of the drug transactions.  As you indicated, this was known by Mr. Westerfield, and also that Brown was willing to testify in your client's behalf.  (Exhibit A hereto).

More significantly, from a Brady standpoint, Mr. Westerfield and his counsel were made aware, prior to his trial, that during February and March of 2005, Mr. Westerfield was subjected to electronic monitoring by the

local probation department as a condition of his release on
an unrelated matter.  That electronic monitoring device,
which showed all instances when Mr. Westerfield left his
residence, demonstrated that Mr. Westerfield was not at
Tyron Brown's residence at the time when Bray claimed the
drug deals with Westerfield occurred.

       At his trial, Westerfield called as a defense witness
an individual named Keith Hardin, who testified that it was
his job to monitor the GPS tracking device placed on
Westerfield's ankle, that the device was in good working
order and that the records of such device provided
Westerfield with a firm alibi for the Bray drug deals.
(Exhibit B hereto).  Accordingly, Westerfield's claim that
he suffered some constitutional infirmity because he was
not provided with Brady material is ridiculous because he
was acquitted of the Bray drug counts undoubtedly because
the relevant Brady material was in fact provided to him.

       Finally, the count of the indictment (Count 30) to
which Bray was convicted by the jury following the trial
had nothing to do with Bray or his deceptions.  As AUSA
Serrano noted at Westerfield's sentencing, when
Westerfield's telephone calls were monitored from the
Richland County Jail during his incarceration on unrelated
charges, calls were intercepted between Westerfield and two

13

women, Aisha Ford and Jacquoia Ginn.  During those calls,
Westerfield directed the women to move his drugs from one
location to another, demonstrating that he intended to
resume his drug business as soon as he was released from
prison.  (Exhibit C hereto).

As a result of those interceptions, on or about April
22, 2005, the Richland County Sheriff's Office obtained a
search warrant on a location affiliated with Westerfield,
and a quantity of drugs was seized.  The affiant on the
search warrant was Captain Larry Faith of the RCSO, and
none of the information supporting the probable cause was
derived from Bray.  Also, this search warrant was issued
many months prior to the involvement of DEA in the
Mansfield investigations.  (Exhibit D hereto).

Both Ford and Ginn testified as government witnesses
at Westerfield's trial.  Unlike many of the other Mansfield
crack defendants who were convicted either following their
guilty pleas or guilty verdicts, Westerfield's case was not
dismissed because the government determined that his
conviction was not tainted by any evidence supplied by
Bray, but rather was based exclusively upon independent
evidence from jail telephone interceptions and a search
warrant wholly devoid of any information provided by Bray.

14

## Conclusion

For the reasons stated herein, no additional discovery should be ordered until defendants' anticipated qualified immunity motions have been decided.

Respectfully submitted,

s/ Thomas G. Roth

THOMAS G. ROTH
LAW OFFICES OF THOMAS G. ROTH
12 FAIRVIEW AVENUE
WEST ORANGE, NEW JERSEY 07052
(973) 736-9090
(973) 736-8005
email: tgroth395@aol.com

s/ Joel J. Kirkpatrick

JOEL J. KIRKPATRICK
KIRKPATRICK LAW OFFICES, P.C.
31800 NORTHWESTERN HIGHWAY
SUITE 350
FARMINGTON HILLS, MI 48334
(248) 855-6010
(866) 241-4152 fax
email: joel@kirk-law.com

Attorneys for Defendant
Lee Lucas

s/Jan M. Holtzman
JAN M. HOLTZMAN (0017949)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio  45202
(513) 684-3711
Fax:  (513) 684-6972
Jan.Holtzman @usdoj.gov

15

s/Gerald F. Kaminski
GERALD F. KAMINSKI (0012532)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio  45202
(513) 684-3711
Fax:  (513) 684-6972
Gerald.Kaminski @usdoj.gov
Counsel for Robert Cross,
Robert Verhiley, Anthony Marotta
and Robert Corso


s/Jennifer M. Meyer
JENNIFER M. MEYER (0077853)
City of Cleveland
601 Lakeside Avenue, Suite
Cleveland, OH 44114
(216) 664-2767
Fax: (216) 664-2663
jmeyer@city.cleveland.oh.us
Counsel for Jamaal Ansari,


Dated: July 22, 2010


**CERTIFICATE OF SERVICE**

I certify that on July 22, 2010, a copy of the above

Opposition Motion was filed electronically.  Notice of this

filing will be sent to all parties by operation of the

Court's electronic filing system.  Parties may access this

filing through the Court's system.


s/ Joel J. Kirkpatrick

JOEL J. KIRKPATRICK
Attorney for Defendant
Lee Lucas

16