**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Jason Westerfield,** | ) | **CASE NO. 1:07 CV 3518** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Lee Lucas, *et al.*,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant Lee Lucas' Motion to Dismiss the
Complaint/Motion for Summary Judgment on Qualified Immunity Grounds (Doc. 125).  Also
pending are Defendant Matt Mayer's Motion for Summary Judgment (Doc. 127), Defendant
Larry Faith's Motion for Summary Judgment (Doc. 128), Motion of Defendant DEA Special
Agent Robert Cross for Summary Judgment with Respect to *Bivens* Claims (Doc. 129), Officer
Ansari's Motion for Summary Judgment (Doc. 130), and the Motion of Defendant Metcalf for
Summary Judgment (Doc. 131).  This is a civil rights case.  For the reasons that follow, the
motions filed by defendant Lucas and defendant Metcalf are GRANTED in PART and DENIED

1

in PART.  These defendants are entitled to qualified immunity with respect to all alleged

constitutional violations except Westerfield's *Brady* claim related to Count 30.  The motions

filed by defendants Cross, Ansari, Faith, and Mayer are GRANTED as these defendants are

entitled to qualified immunity with respect to all alleged constitutional violations.  Having

substituted the United States as the party in interest with respect to the state law claims,

defendants Cross and Ansari are no longer parties to this action.  The state law claims remain

pending against defendants Metcalf, Faith, and Mayer.

**FACTS**

Plaintiff, Jason Westerfield, brings this action against defendants, United States of

America[1], Lee Lucas, Robert Cross, Richland County, Chuck Metcalf, Matt Mayer, Larry Faith,

and Jamal Ansari.  Lucas, Cross, and Ansari were considered federal employees at the time of

the alleged wrongdoing, while Metcalf, Mayer, and Faith were employed by Richland County.

This is a civil rights case.  Each individual defendant asks the Court to afford him qualified

immunity from suit.

In February of 2005, the Richland County Sheriff's Office ("RSCO") registered and

recruited Jerrell Bray as an informant and used him to make drug buys from drug traffickers in

Mansfield.  In addition, the Metrich Unit, which is a task force of federal and local agencies

designed to investigate and prosecute drug crimes in Mansfield, registered Bray as an informant.

Bray was "principally" controlled by defendant Metcalf, who was involved in the majority of the

---

[1]     The United States was originally dismissed as a defendant.
Plaintiff later refiled his claims against the United States in a new
matter.  The Court consolidated the two actions on November 12,
2010.  Plaintiff also originally named the City of Mansfield, but
voluntarily dismissed this defendant on January 8, 2008.

2

drug buys set up in Mansfield.  In addition, defendants Mayer and Faith also controlled Bray.

Detective Dawn Brown, who was employed by RCSO, controlled Bray for the Metrich Unit.

Bray purchased drugs from Westerfield on February 15, March 12, and March 15, 2005.

Defendant Faith is a Captain with the RCSO.  According to defendant Faith, he had no

involvement in the February 15th or March 12th controlled buys.  With regard to the March 15th

buy, defendant Faith worked the "cobble phone" from the RCSO.  Defendant Faith took Bray's

statement after he returned from the buy.  He avers that he had no reason to believe that Bray

fabricated evidence and he had information from several other sources that supported Bray's

reliability.

Defendant Mayer is a Sergeant with the RCSO.  He had some degree of involvement in

all three controlled buys.  With regard to the February 15th buy, defendant Mayer provided

surveillance and prepared a confidential report.  On March 12th, defendant Mayer monitored the

cobble phone from the RCSO during the buy.  He prepared confidential reports regarding the

money given to Bray to be used for the buy.  Thereafter, he conducted a followup interview of

Bray regarding the March 12th buy.  On March 15th, defendant Mayer again provided

surveillance for the buy and prepared a follow up report regarding the events of that date.

Defendant Mayer did not identify Westerfield as a participant in any of the drug transactions.

Like defendant Faith, defendant Mayer had information from various sources supporting Bray's

reliability.

Defendant Metcalf is a detective with the RCSO.  Defendant Metcalf "ran the wire"

during the March 12th transaction.  With respect to the March 15th buy, defendant Metcalf

provided security and surveillance and indicated that he saw a purple car in the area that he

3

believed belonged to Westerfield.

Thereafter, it appears Westerfield was arrested and incarcerated.[2]  While Westerfield was incarcerated, authorities intercepted phone calls originating from the Richland County Jail.  The calls were between Westerfield and Aisha Ford and Joquoia Ginn.  Based on these phone calls, RCSO obtained a search warrant on April 22, 2005, to search a location affiliated with Westerfield.  Defendants Faith and Mayer assisted other officers in executing the search warrant and interviewing Ford, Ginn, and Westerfield.  During the search, defendant Metcalf found a box containing crack cocaine.

On August 31, 2005, a federal grand jury indicted Westerfield with being a felon in possession of a firearm.  This charge appears unrelated to the Mansfield drug investigation.  Later, on November 9, 2005, defendant and 23 others were indicted on drug-related and weapons charges.[3]  One of the counts filed against Westerfield ("Count 30") was wholly unrelated to Bray.  Rather, Count 30 related to the intercepted telephone calls and the subsequent discovery of drugs at a location associated with Westerfield.

Around the time of the first indictment in August of 2005, RCSO requested the assistance of the Drug Enforcement Agency ("DEA") with a suspected drug ring located in Mansfield, Ohio.  Defendant Lucas, a federal agent, was told by defendant Metcalf that Bray was a good informant and that RCSO had nothing but good experiences with Bray.

Defendants Lucas and Cross prepared paperwork to register Bray as a DEA informant.

---

[2]     Plaintiff wholly fails to identify any facts pertaining to his own investigation and arrest.

[3]     A superseding indictment was later issued.

4

The DEA did not select any of the targets for the Mansfield drug deals.  Rather, Bray or RCSO determined which individuals to target.  Defendant Lucas avers that he did not personally know any of the Mansfield drug defendants, including Westerfield.  Defendant Lucas further avers that his role in the Mansfield drug cases varied.  Sometimes he acted as a surveillance agent or an observer.  Other times he acted undercover and purchased drugs himself.  In addition, Lucas, along with Cross, wrote DEA-6 reports relating to the drug deals.

Defendants Metcalf, Faith, and Mayer were involved in Westerfield's investigation only as outlined above.  The federal defendants, *i.e.*, Lucas, Cross, and Ansari, had no involvement in Westerfield's investigation, search, or arrest for any charges, as the drug charges stemmed from events occurring nearly six months prior to the DEA's involvement.[4]  Defendant Ansari testified that he was not involved in the investigation and arrest of Westerfield.  Nor did defendant Ansari interview witnesses, handle evidence, or testify at Westerfield's trial.

From December of 2005 through June of 2006, three proffer meetings were held.  In addition to the prosecutors, defendants Faith and Cross participated in some of the meetings.  After certain meetings, defendant Cross prepared a written report.  Prior to trial, several meetings were held at the United States Attorney's Office for purposes of witness preparation.  At one of these meetings, the government prepared Jerrell Bray.  Defendant Cross was present at the meetings.

In the summer of 2006, Westerfield and several co-defendants proceeded to trial on the Mansfield drug case.  Defendant Lucas testified for the government, but his testimony related

---

[4]     The DEA's involvement in the Mansfield drug deals lasted from September through November of 2005.

solely to Westerfield's co-defendants.  Defendants Faith and Mayer did not testify.  Nor did defendant Cross, although he attended the trial.

Prior to the trial, the prosecution informed Westerfield's attorneys that one of Westerfield's co-defendants indicated that Westerfield did not participate in the Mansfield drug cases as alleged in the indictment.  In addition, the prosecution disclosed that Westerfield was subject to electronic monitoring at the time the three drug deals occurred and that the monitoring device showed that Westerfield was not at the location where the drug buys occurred.

At the conclusion of the trial, the jury acquitted Westerfield of all Mansfield drug charges.  The jury convicted Westerfield on Count 30, which stemmed from the intercepted jail telephone calls and subsequent search.

On November 14, 2006, Westerfield entered a guilty plea to the felon in possession of a firearm charge.  Ultimately, he received a sentence of 100 months.[5]  Thereafter, on March 8, 2007, the court sentenced Westerfield to 360 months for his conviction on Count 30.

In late 2007, Bray was charged with various counts of civil rights violations and perjury for his role in the Mansfield drug case.  In essence, Bray repeatedly framed innocent individuals by identifying them as participants in the drug conspiracy.  Bray entered into a plea agreement with the government and received a sentence of 165 months in prison.

According to Westerfield, defendants knew that Bray was falsely identifying the Mansfield defendants.  During the course of the investigation, Bray routinely dialed the same phone numbers, although he claimed to be calling multiple unrelated suspects, called one suspect

---

[5]     Westerfield originally received 180 months, but after various
        appeals, the sentence was reduced to 100 months.

while claiming to be speaking to a different suspect, and had a phone encounter different from the encounter documented in the reports.  Defendant Metcalf supervised the calls made by Bray. Bray also stole drugs provided to him by the DEA.  Discrepancies between the weights provided to him and the weights sold by him occurred.  At one point, Bray was "arrested" after drugs were discovered behind a plate in his steering wheel.  Defendant Metcalf intervened on Bray's behalf and he was not prosecuted.   At one point, Bray informed agents that he paid more than he actually paid during a drug buy.  He hid the extra money in his radio.  Defendant Faith monitored the transaction on the cobble phone and was also present when agents later discovered the money in his car.  None of this information was disclosed to Westerfield's defense counsel.

With respect to the Mansfield defendants other than Westerfield, it is unrefuted that the following occurred:

**Westerfield's co-defendants at trial**[6]

Dwayne Nabors:

- Defendants Metcalf and Lucas testified that no video was taken of the drug deal involving Nabors, even though Metcalf later admitted that he videotaped the transaction;

- Defendants Ansari, Lucas, and Metcalf identified Nabors as the individual involved in the drug deal.  The real perpetrator looks nothing like Nabors. According to plaintiff, the videotape would have disclosed the discrepancy; and

- Defendant Metcalf now admits that he signed an affidavit in support of a search

---

[6]     Not all facts regarding all Mansfield defendants are set forth herein.  Rather, the Court provides a sampling of the types of misconduct alleged to have occurred against defendants appearing at trial with Westerfield.  No facts regarding the investigations, arrests, and trials of other Mansfield defendants are set forth herein.  The Court finds that facts surrounding those individuals are not relevant to the qualified immunity analysis.

warrant without reviewing or fully understanding its contents.  The affidavit contains a number of untruthful statements.  The DEA drafted the search warrant affidavit.

Lowestco Ballard:

• A stand-in, Darren Transou, impersonated Ballard during the drug deal.  Ballard and Transou look nothing alike;

• During a recorded telephone conversation, Transou referred to Ballard in the third person, even though he was supposed to be Ballard;

• In the written transcript of that call, defendant Lucas deleted the third-party references to "Ballard" and inserted the name "Davis;"

• In addition, the third party reference to Ballard was deleted in the written transcript and replaced with a series of ellipses, even though the recording was audible; and

• Defendant Metcalf recorded all of the telephone calls and testified at the trial.

Danny Lee Brown:

• Bray made two recorded telephone calls to Brown.  Thereafter, Bray told officers that Brown changed his phone number.  The phone number Bray provided was actually the phone number for Robert Harris, who was also a target of the investigation;

• During an ensuing drug deal falsely attributed to Danny Brown, a courier was used.  Bray's body recording showed that Bray said, "here, give that to Chris." This statement was omitted from the transcription.

In May of 2009, defendant Metcalf was charged with a criminal civil rights violation for his actions and testimony pertaining to Westerfield's co-defendant, Dwayne Nabors.  Metcalf pled guilty to presenting false evidence against Nabors at trial.  Metcalf admits that he falsely identified Nabors as a participant in a drug deal.  Metcalf indicated that he testified falsely because he believed that was "what everybody else was going to testify to."  He indicated that his testimony at the Nabors trial consisted of a "regurgitation" of the DEA report.

Thereafter, the government indicted defendant Lucas for obstruction of justice, false

8

statement, perjury, and deprivation of civil rights for his role in the Mansfield drug case.

According to the indictment, defendant Lucas knew of Bray's actions, covered up those actions,

and testified falsely against many of the defendants in the Mansfield drug case.  Defendant was

not indicted for any role in Westerfield's criminal case.  After a lengthy trial, at which defendant

Metcalf testified for the government, a jury acquitted defendant Lucas of all charges.  Prior to his

indictment, defendant Lucas prepared a memorandum, which he intended to use to assist people

in coordinating their stories.  He now knows that statements contained in the memorandum are

not true.

After discovering that Bray fabricated evidence, the government voluntarily dismissed

many of the Mansfield defendants.  The government did not, however, dismiss the case against

Westerfield.  According to the government, the only count on which Westerfield was convicted,

*i.e.*, Count 30, was not tainted by Bray's actions.

On November 9, 2007, Westerfield filed this lawsuit.  The complaint does not contain

separately identifiable causes of action.  In appears, however, that Westerfield asserts claims for

violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.  Westerfield further

asserts claims for malicious prosecution and intentional infliction of emotional distress.  In

addition, Westerfield alleges that defendants Lucas and Cross subjected him to judicial

proceedings without probable cause.  It appears that Westerfield alleges that defendants

conspired to deprive plaintiff of his constitutional rights.  Westerfield also alleges that Richland

County maintained a policy permitting the constitutional violations and failed to train its

employees.

In April of 2008, the United States moved to be substituted in place of the individual

federal defendants, *i.e.*, defendants Lucas, Cross, and Ansari, with respect to Westerfield's common law tort claims.  The Court granted that motion.  Thereafter, the individual defendants moved for summary judgment on the grounds of qualified immunity.  In response, Westerfield provided a Rule 56(f) affidavit from his attorney arguing that he needed discovery to respond to the motions.  The Court concluded that Westerfield's affidavit fell short of establishing that additional discovery would assist him in defending against the motions.  Accordingly, the Court granted the summary judgment motions.  Thereafter, Westerfield filed a motion to reconsider and attached a new Rule 56(f) affidavit.  The Court denied the motion to reconsider on the basis that the arguments and evidence in the affidavit were available to Westerfield at the time the original affidavit was submitted.  As such, his failure to timely submit a proper Rule 56(f) affidavit did not warrant reconsideration.

Westerfield appealed and the Sixth Circuit ruled that the 'interests of justice' warranted consideration of the supplemental Rule 56(f) affidavit.  The Sixth Circuit remanded the matter and indicated that the Court should fashion a discovery order that is limited to the issue of qualified immunity and further indicated that defendants could renew their motions once limited discovery is complete.  On remand, the Court noted that the following materials are available to Westerfield: over 4,000 pages of trial transcript from the Lucas trial, along with tens of thousands of pages of exhibits.  All of the defendants in this case, with the exception of defendant Ansari, testified at the Lucas trial.  Morever, the trial exhibits include the following: the entire internal files of the United States Attorney's Office in Cleveland, United States Drug Enforcement Administration, and Richland County Sheriff's Office.  Nonetheless, this Court allowed Westerfield to conduct additional discovery, consisting of the submission of twenty

10

interrogatories to each defendant and the deposition of defendant Ansari.

On July 19, 2010, Westerfield filed a motion to vacate his conviction and sentence with respect to Count 30 in the Mansfield case. In response, the government consented to the motion. The government indicated that the prosecution failed to disclose *Brady/Giglio* material at Westerfield's trial.  Specifically, the government recognized that defendant Metcalf is a convicted perjurer.  Metcalf, as a member of the prosecution team, failed to disclose this impeaching information.  The government conceded that Metcalf was the only witness to testify about finding the box that contained the crack cocaine.  The government then determined that it would be unable to establish Westerfield's guilt beyond a reasonable doubt as Metcalf's testimony would be required for a conviction.  As the government would "decline to call a convicted perjurer to the stand," Metcalf's testimony would not be used.  As such, the government requested that the court dismiss Count 30.  (*See*, Case No. 05 CR 537, Doc. 981).

Westerfield remains in prison as a result of the felon in possession of a firearm conviction.

The individual defendants now renew their motions for summary judgment[7] on the grounds of qualified immunity.  Westerfield opposes the motion.

**STANDARD OF REVIEW**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the

---

[7]        Defendant Lucas moves for dismissal or summary judgment.

11

absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323.  A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985).  However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

## ANALYSIS

"The doctrine of qualified immunity shields government officials from liability, as well as from suit, so long as their official conduct does not violate clearly established statutory or

12

constitutional rights of which a reasonable person would have known." *Hardy v. Jefferson*

*Community College*, 260 F.3d 671 (6th Cir. 2001) citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982).  The Sixth Circuit has explained:

> The Supreme Court has instructed that a qualified immunity inquiry
> generally entails two discrete analytical steps.  As a threshold matter, we
> must ask whether the record, viewed most favorably to the plaintiff,
> establishes that 'the officer's conduct violated a constitutional right.'
> *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d
> 272 (2001); *see also Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).
> 'If no constitutional right would have been violated were the allegations
> established, there is no necessity for further inquiries concerning qualified
> immunity.' *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156.  'On the other
> hand, if a violation could be made out on a favorable view of the parties'
> submissions, the next, sequential step is to ask whether the right was
> clearly established.' 533 U.S. at 201, 121 S.Ct. at 2156; *see also Burchett*,
> 310 F.3d at 942.

*Cherrington v. Skeeter*, 344 F.3d 631, 636 (6th Cir. 2003).

With regard to the question whether the right was clearly established, this inquiry "must

be undertaken in light of the specific context of the case, not as a broad general proposition."

*Saucier*, 533 U.S. at 201.  Further, "[t]he relevant, dispositive inquiry in determining whether a

right is clearly established is whether it would be clear to a reasonable officer that his conduct

was unlawful in the situation he confronted." *Id*. at 202.[8]

In this case, Westerfield generally alleges that defendants fabricated evidence, falsely

testified, intentionally failed to disclose *Brady* material, and engaged in a conspiracy to frame

innocent individuals.  With the exception of the *Brady* claim as it pertains to charges other than

Count 30, no defendant argues that these alleged constitutional violations are not clearly

---

[8]  The constitutional claims are actionable against the federal
defendants under *Bivens v. Six Unknown Named Agents of the
Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

13

established.  Rather, each individual argues that he did not commit the alleged constitutional violation.

Before addressing each individual defendant, the Court will collectively address Westerfield's *Brady* claim as it pertains to the drug charges other than Count 30.  This *Brady* violation relates to information about Bray and the alleged conspiracy.  Defendants argue that, even assuming defendants failed to disclose *Brady* material, no constitutional violation occurred because Westerfield was acquitted of these charges.

Upon review, the Court finds that Westerfield's acquittal on the drug charges other than Count 30 prevents him from maintaining a *Brady* claim against any defendant for those charges. The Sixth Circuit has expressly held that the termination of the underlying criminal case in favor of the accused forecloses a *Brady* claim.  *See*, *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988).  *See also*, *Smith v. Almada*, — F.3d — 2011 WL 941606 (9th Cir. 2011)(noting that the Sixth Circuit concluded in *McCune* that an acquitted individual may not assert a *Brady* claim); *Morgan v. Gertz*, 166 F.3d 1307 (10th Cir. 1999)(an acquitted individual "cannot be said to have been deprived of the right to a fair trial"); *Flores v. Satz*, 137 F.3d 1275 (11th Cir. 1998)(where plaintiff was never convicted, no *Brady* claim could be maintained); *Sutherland v. Mizer*, 625 F.Supp.2d 492, 503 (E.D.Mich. 2008)(no *Brady* violation where accused is acquitted).[9]  Accordingly, Westerfield's *Brady* claim fails because no constitutional violation occurred as the result of any alleged failure to disclose exculpatory information with

---

[9] In a previously filed brief, Westerfield relied on *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009) in support of his position that an acquittal does not foreclose a *Brady* claim. Westerfield's citation is misplaced in that the plaintiff in *Moldowan* was originally convicted of the charged crime.

respect to the drug charges other than Count 30.

Having so concluded, the Court now turns to whether each of the individual defendants is entitled to qualified immunity for the *Brady* claim as it relates to count 30 and any non-*Brady* claims.

Defendant Lucas

Defendant Lucas argues that he is entitled to qualified immunity[10] because he had no personal involvement in the investigation, drug buys, arrest, or search affiliated with Westerfield. Although defendant Lucas testified at trial, he did not testify with respect to Westerfield. Defendant Lucas argues that qualified immunity applies because plaintiff cannot show that he was directly or personally responsible for any unlawful act.

Plaintiff responds by arguing that an ongoing conspiracy existed at the time defendant Lucas became involved in the Mansfield cases.  As such, his participation in the "greater" conspiracy is sufficient to impose liability on him for actions taken by co-conspirators before defendant Lucas became involved.  In addition, Westerfield points out that defendant Lucas became involved in the investigation prior to plaintiff's trial, yet took no corrective action.

Upon review, the Court finds that defendant Lucas is entitled to qualified immunity with respect to all alleged constitutional violations occurring before the DEA's involvement with the

---

[10]     Defendant Lucas argues that he is entitled to dismissal of the complaint.  None of the other individual defendants seek dismissal.  According to defendant Lucas, the complaint does not properly allege that defendant Lucas engaged in any wrongdoing.  Westerfield argues that the complaint states a claim for relief.  Upon review, this Court agrees.  As such, the Court will consider defendant Lucas's alternative argument, *i.e.*, whether summary judgment based on qualified immunity is appropriate.

Mansfield drug investigation.   Plaintiff's claim for wrongful arrest accrued on the date he was

arrested.  Yet, defendant Lucas and other DEA agents had nothing to do with Westerfield's

pretrial case as the DEA did not become involved until nearly six months *after* the alleged drug

buys occurred.  The Court rejects Westerfield's argument that defendant Lucas can be liable for

alleged constitutional violations occurring months before defendant Lucas's involvement.  As an

initial matter, other than citing federal criminal conspiracy cases, plaintiff fails to inform the

Court or the defendants as to the legal basis for his conspiracy to violate civil rights claim.[11]

Even if such a claim had been made, Westerfield fails to point to any law concluding that a

federal officer could be held liable for constitutional violations committed months before the

federal officer's involvement in the alleged conspiracy.[12]  Although Westerfield generally argues

---

[11]     Plaintiff relies on *United States of America v. Avery*, 128 F.3d 966,
971 (6th Cir. 1997), *United States v. Blakeney*, 942 F.2d 1001 (6th
Cir. 1991), and *United States v. Melendez*, 2004 WL 162937 (E.D.
Mich. Jan. 20, 2004).  These cases, however, simply stand for the
basic proposition that a single conspiracy can exist and that an
agreement to participate in a conspiracy may be inferred.  The
cases are all criminal cases and no case addresses whether a civil
action exists against a federal agent for conspiring to violate
constitutional rights.  The only case even arguably on point is
*Melendez*, in which police officers were indicted under 18 U.S.C. §
241 for conspiracy to violate constitutional rights.  Section 241,
however, is a criminal statute and no civil remedies exist
thereunder.  *Williams v. Michigan,* 2006 WL 3759974 *(*E.D.Mich.
Dec. 19, 2006*).  See also, Watson v. Devlin*, 167 F.Supp. 638, 640
(E.D.Mich.1958), *aff'd* 268 F.2d 211 (6th Cir.1959).

[12]     Notably, plaintiff does not purport to assert a claim pursuant to 28
U.S.C. § 1985, which addresses conspiracy claims. It appears that
Section 1985 would not assist plaintiff in any event.  Plaintiff does
not allege that he is a member of a particular class.  Nor does it
appear that the alleged misconduct falls within the remaining
provisions of Section 1985.  Regardless, plaintiff does not

that defendant Lucas joined an "ongoing" conspiracy, Westerfield fails to point to any evidence establishing that a conspiracy existed *prior* to the DEA's involvement, *i.e.*, at the time the alleged drug buys occurred.  Even more troubling, Westerfield fails to point to any evidence of any DEA involvement with respect to plaintiff other than testimonial acts during the trial.  Nor does Westerfield point to any evidence suggesting that any non-DEA defendant (*i.e.*, member of the alleged conspiracy) violated Westerfield's rights with respect to his investigation and arrest.  Rather, Westerfield spends nearly all of his briefing discussing the facts pertaining to other Mansfield defendants and fails to discuss his own investigation and arrest at all.  Thus, defendant Lucas is entitled to qualified immunity for plaintiff's claims surrounding the surveillance, investigation, and arrest of Westerfield.

The Court now turns to whether defendant Lucas is entitled to qualified immunity for events post-dating the DEA's involvement.  Other than asserting a *Brady* violation, plaintiff does not articulate any specific constitutional violation committed by defendant Lucas with respect to Westerfield.  Westerfield acknowledges that defendant Lucas did not testify as to *any* of the drug charges asserted against him.  Although defendant Lucas testified against other individual defendants, including co-defendants at Westerfield's trial, defendant Lucas was simply not involved in Westerfield's prosecution.  Accordingly, other than the alleged *Brady* violation, the Court finds that plaintiff fails to identify a constitutional violation stemming from defendant Lucas's involvement in the prosecution of plaintiff.  As such, defendant Lucas is entitled to qualified immunity.

---

expressly invoke Section 1985 in his complaint or in any of the briefing on the pending motions.

17

The Court now turns to whether qualified immunity exists for *Brady* violations stemming from Count 30.  Defendant Lucas claims that he cannot be held liable for any damages resulting from Westerfield's conviction on Count 30 because neither defendant Lucas nor Bray had anything to do with that charge.  He further argues that the government's decision to dismiss Count 30 has no bearing on his liability as Metcalf's false testimony related to Westerfield's co-defendant, Dwyane Nabors.  Finally, defendant Lucas claims that no conspiracy existed to frame innocent individuals.  Defendant Lucas points out that Bray testified at Lucas's criminal trial that Bray acted alone.  According to Westerfield, defendant Lucas knew that Metcalf's testimony was false and failed to "address" the perjury.  Westerfield also argues that, even if Bray's testimony was not necessary to convict Westerfield on Count 30, the fabrication of the other drug charges is itself exculpatory evidence that Westerfield could have used to defeat Count 30.  Having failed to disclose this evidence, defendant Lucas is not entitled to qualified immunity.[13]

In order to convict Westerfield of Count 30, the government heavily relied on the testimony of defendant Metcalf, who later admitted to having perjured himself at the trial. Although the perjury did not relate to Westerfield, the government now acknowledges that Metcalf's perjury constitutes *Brady* material for purposes of Count 30.  In other words, the government recognizes that it was duty-bound to disclose to Westerfield's defense that Metcalf

---

[13] Westerfield also argues that his malicious prosecution claim is viable regardless of whether his acquittal of the Bray-related charges precludes a constitutional claim based on *Brady*. As a result of the substitution entered by the Court, the United States government was substituted in place of the individual federal defendants.  Thus, the tort law claims cannot proceed against defendants Lucas, Ansari, and Cross.

18

engaged in perjury.[14]  Knowledge of this fact would have permitted Westerfield to impeach

Metcalf's testimony.  In fact, the government concluded that disclosure of this impeaching

information would have prevented a conviction.  As such, the government agreed to dismiss

Count 30.  Based on this admission, the Court finds that the failure to disclose Metcalf's perjury

resulted in a *Brady* violation.

The sole issue before this Court is whether defendant Lucas knew of the perjury and, if

so, whether the law obligated him to inform the prosecutor.  Although defendant Lucas did not

testify with respect to Westerfield, he sat at the prosecutor's table throughout the trial and

testified as to other defendants.  Upon review, the Court finds that Westerfield presented

sufficient evidence to show that defendant Lucas knew Metcalf perjured himself during the trial.

Specifically, Westerfield provides evidence of the following:

- Nabors and the perpetrator look nothing alike.  Both defendant Lucas and defendant Metcalf identified Nabors as the perpetrator at trial.  Both defendants told the prosecutor that no videotape existed for the drug deal when, in fact, a videotape existed.  Defendant Metcalf admitted that he lied about the lack of a videotape;

- Defendant Metcalf testified that the DEA-6 report contained a number of untrue statements, some of which were attributed to defendant Metcalf;

- Defendant Metcalf testified that he perjured himself in order for the testimony to be consistent with the "lack" of a videotape and because he "regurgitated what [came off] of the DEA-6 report;"

- Defendants Lucas and Metcalf both identified Nabors as the driver of a vehicle on Hill Street.  Defendant Metcalf now admits that he was never on Hill Street in any position to identify a vehicle;

---

[14]     This admission is contained in the government's response to Westerfield's 28 U.S.C. § 2255 motion filed in Case No. 05 CR 537 (ECF 981).

- In order to "make sense" of the lack of video, defendant Metcalf testified that he was with defendant Lucas at the location where Nabors worked.  Defendant Metcalf now admits he was not with defendant Lucas; and

- The DEA prepared a search warrant for the Nabors deal.  The search warrant contained a statement indicating that defendant Metcalf identified Nabors as the driver of the vehicle and that he saw Nabors exit the vehicle.  Defendant Metcalf signed the warrant even though no such identification was made.  Defendant Metcalf testified that he never told Lucas that he observed Nabors drive or exit the vehicle.

Based on this evidence[15], the Court finds that a question of fact exists at this time as to whether defendant Lucas knew that Metcalf perjured himself during the trial.  Although the drug deal was videotaped, both defendant Metcalf and defendant Lucas told the prosecutor that no such videotape existed.  In order to explain his whereabouts while in actuality he was videotaping the deal, defendant Metcalf indicated that he was with defendant Lucas when, in fact, he was not.  Obviously, defendant Lucas would have knowledge of the fact that Metcalf lied.  In addition, according to defendant Metcalf, the DEA-6 report contains a number of inaccurate statements, some of which are wrongly attributed to defendant Metcalf.  In order to maintain the integrity of the DEA-6 report, Metcalf engaged in perjury.  Similarly, the search warrant presumably drafted by defendant Lucas, attributes critical statements to defendant Metcalf, even though defendant Metcalf claims he never made the statements to defendant Lucas.  In light of this evidence, and since defendant Lucas offers no argument specific to this issue, the Court finds that there is sufficient evidence at this time to establish a question of fact

---

[15]    Westerfield also points to evidence suggesting that defendant Lucas knew that Bray committed perjury.  Bray, however, did not testify with respect to Count 30.  Rather, his testimony against Westerfield related to the other drug charges for which Westerfield was acquitted.  As set forth above, Westerfield's acquittal precludes a *Brady* claim with respect to Bray's testimony.

20

as to whether defendant Lucas possessed *Brady* material.  Specifically, the evidence suggests that defendant Lucas knew that Metcalf lied during the trial regarding Nabors, thereby perjuring himself.  As defendant Metcalf was a material witness in Westerfield's prosecution, defendant Lucas possessed *Brady* material, which should have been disclosed to the prosecutor.

In order for defendant Lucas to be liable, however, he must be under a duty to disclose the information.  Pursuant to Sixth Circuit precedent, police officers are required to disclose *Brady* material to the prosecutor.  *Moldowan v. Warren*, 578 F.3d 351, 379-81 (6th Cir. 2009).  This duty is clearly established in the Sixth Circuit.  *Id.* at 382.  Thus, the Court finds that even though defendant Lucas may not have been an investigating or testifying officer, he is a "member of the prosecution" team for purposes of *Brady* in that he sat at the prosecution table throughout the trial.  *See*, *U.S. v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007)(finding no *Brady* violation where cooperating witness cannot be considered "governmental agent").  A governmental agent may not sit idly by at the prosecutor's table, hear perjured testimony, and be insulated from liability for failing to disclose the material to the prosecutor.  Accordingly, defendant Lucas is not entitled to qualified immunity with respect to plaintiff's *Brady* claim on Count 30.

Defendant Lucas points out that Westerfield did not spend any additional time in jail, as he is serving a sentence unrelated to the drug charges.  Westerfield argues that the fact that he did not spend any additional time in jail does not warrant the application of qualified immunity.  According to Westerfield, he was wrongfully arrested, charged, tried, convicted, and sentenced for crimes he did not commit.  As such, the issue of additional jail time relates to damages, not the existence of qualified immunity.

Upon review, the Court rejects defendant Lucas's argument.  Defendant Lucas offers no support for his proposition that a *Brady* claim only arises if a defendant is imprisoned.  As such, qualified immunity is not warranted on this basis.

Defendant Cross

Defendant Cross is a DEA Special Agent.  Like Defendant Lucas, defendant Cross did not participate in the investigation and arrest of plaintiff as the DEA's involvement postdates Westerfield's arrest.  Accordingly, for the same reasons set forth above, Defendant Cross is entitled to qualified immunity for any alleged pretrial constitutional violations including wrongful arrest and lack of probable cause.  In addition, the Court already determined that no *Brady* violation exists with respect to the Mansfield drug charges other than Count 30.

With respect to "trial" involvement, the evidence shows that defendant Cross participated in three proffer meetings regarding Westerfield and other defendants.  In addition, defendant Cross attended several meetings to assist the prosecutor in preparing witnesses for the criminal trial of Westerfield and his co-defendants.  Defendant Cross, however, did not testify at the trial.  Although he attended portions of the trial as a spectator, defendant Cross did not sit at counsel's table.

Upon review, the Court finds that defendant Cross is entitled to qualified immunity with respect to any trial related activities.  Westerfield does not argue that any constitutional violation arose as a result of the proffer or witness preparation meetings.  To the extent Westerfield claims a *Brady* violation exists for defendant Metcalf's testimony on Count 30, the argument is rejected.  Defendant Cross provides his affidavit in which he avers that he had no knowledge that defendant Metcalf would testify falsely at Westerfield's trial.  Nor did he become aware of any

22

such false testimony until after defendant Metcalf pled guilty.  Westerfield offers no evidence suggesting that defendant Cross possessed any knowledge regarding Metcalf's false testimony. Rather, the sole evidence presented regarding defendant Cross is submitted in support of Westerfield's claim that defendant Cross can be liable for the constitutional violations of the other defendants because of an alleged conspiracy.  Absent evidence tending to show that defendant Cross knew that Metcalf lied, defendant Cross cannot be liable for violating *Brady*. Accordingly, defendant Cross is entitled to qualified immunity.[16]

### Defendant Ansari

Defendant Ansari is a member of the DEA Taskforce.  Like Defendants Lucas and Cross, defendant Ansari did not participate in the investigation and arrest of plaintiff.  Accordingly, for the same reasons set forth above, Defendant Ansari is entitled to qualified immunity for any alleged pretrial constitutional violations including wrongful arrest and lack of probable cause.  In addition, the Court already determined that no *Brady* violation exists with respect to the Mansfield drug charges other than Count 30.

Defendant Ansari offers his affidavit, in which he avers that he had no involvement with witnesses and did not testify at defendant's trial.  Plaintiff does not allege that defendant Ansari attended any portion of defendant's trial.  Nor is there any evidence suggesting that defendant Ansari had any knowledge of defendant Metcalf's credibility issues or perjured testimony.

---

[16]    Having concluded that defendant Cross is entitled to qualified immunity with respect to all alleged constitutional violations, and having substituted the United States as the party in interest with respect to the common law tort claims, there are no pending claims remaining against this defendant.

Accordingly, defendant Ansari is entitled to qualified immunity.[17]

<u>Defendant Metcalf</u>

Defendant Metcalf is a detective with the RCSO.  According to defendant Metcalf, he is entitled to qualified immunity.  Defendant Metcalf argues that Westerfield fails to articulate a specific constitutional violation.  He further claims that there was no violation of Westerfield's constitutional rights.  Defendant Metcalf argues that he had limited involvement in the investigation and arrest of Westerfield.  In response, Westerfield points out that Metcalf entered a guilty plea to criminally violating the civil rights of a co-defendant at Westerfield's trial.  He further argues that a conspiracy existed and defendant Metcalf knew that Bray framed innocent people.  Westerfield points out, among other things, that defendant Metcalf knew that Bray stole money from the DEA, used stand-ins, sold drugs, and was "arrested" during the Mansfield investigation.  Westerfield argues that there were numerous *Brady* violations and that Westerfield was "wrongfully arrested, charged, tried, convicted, and sentenced" for crimes he did not commit.

Upon review, the Court finds that defendant Metcalf is entitled to qualified immunity for all alleged constitutional violations stemming from the investigation and arrest of Westerfield for the drug charges other than Count 30.  Westerfield simply makes no argument as to how his constitutional rights were violated by defendant Metcalf or any other defendant.  Other than the passing reference identified in the preceding paragraph, Westerfield makes no mention of

---

[17]     Having concluded that defendant Ansari is entitled to qualified immunity with respect to all alleged constitutional violations, and having substituted the United States as the party in interest with respect to the common law tort claims, there are no pending claims remaining against this defendant.

wrongful arrest.  Nor does Westerfield articulate any other alleged constitutional violation stemming from the investigation or arrest.[18]  More importantly, he does not point out what involvement defendant Metcalf had in Westerfield's investigation and arrest.  Accordingly, to the extent Westerfield asserts such claims, defendant Metcalf is entitled to qualified immunity.

Similarly, with regard to the arrest and investigation surrounding Count 30, Westerfield fails to articulate any alleged constitutional violation, or tie any possible constitutional violation to defendant Metcalf's conduct.[19]  Accordingly, plaintiff fails to establish that defendant Metcalf is not entitled to qualified immunity.

Simply put, the only alleged constitutional violation specifically discussed by Westerfield is an alleged *Brady* violation.  As set forth above, Westerfield's acquittal precludes any *Brady* violation stemming from the drug charges other than Count 30.  Accordingly, defendant Metcalf is entitled to qualified immunity.[20]

With regard to Count 30, however, the Court finds that defendant Metcalf is not entitled

---

[18]  In response to defendant Lucas's motion for summary judgment, Westerfield argues that it is unconstitutional to develop false information, tamper with evidence, mislead the prosecutors in an effort to frame an accused for a crime he did not commit.

[19]  The Court notes that Westerfield fails to point to *any* defendant's wrongful conduct regarding the investigation or arrest of Westerfield.  Rather, Westerfield devotes his brief to unconstitutional acts defendants allegedly committed against other individuals.  But, to the extent plaintiff could sustain a conspiracy claim, he must demonstrate that defendants violated *his* constitutional rights in some way.  He fails to point to any unconstitutional act committed against him with respect to his investigation and arrest.

[20]  Westerfield correctly notes that his malicious prosecution claim is still viable as *qualified* immunity does not apply to this state law claim.

to qualified immunity.  As Westerfield points out, defendant Metcalf admitted to lying during the trial of Westerfield's co-defendant.  Defendant Metcalf also testified against Westerfield, but failed to disclose that he perjured himself with respect to Westerfield's co-defendant. Surprisingly, defendant Metcalf argues that Westerfield is "an extremely fortunate beneficiary of a decision by the United States to forego prosecution of anyone with whom Jerrell Bray was involved."  This statement is simply not true.  As all parties recognize, Jerrell Bray had nothing to do with Westerfield's conviction on Count 30.  Rather, the United States asked that Count 30 be dismissed because the prosecution failed to disclose *Brady/Giglio* material at Westerfield's trial.  Specifically, the government recognized that defendant Metcalf engaged in perjury during the trial.  Defendant Metcalf, as a member of the prosecution team, failed to disclose this impeaching information.  The government conceded that defendant Metcalf was the only witness to testify about finding the box that contained the crack cocaine.  The government then determined that it would be unable to establish Westerfield's guilt beyond a reasonable doubt as defendant Metcalf's testimony would be required for a conviction.  Thus, the United States indicated that it was defendant Metcalf's perjury that caused the dismissal of Count 30.  As such, the Court finds that by testifying falsely at the trial of Westerfield's co-defendant, and failing to disclose the false testimony, defendant Metcalf violated *Brady* because this impeaching information would have resulted in a different outcome at trial.  The concession by the prosecutor that a conviction could not have been obtained is sufficient to satisfy this standard. As such, he is not entitled to qualified immunity.

Defendant Faith

Defendant Faith is a captain with the RCSO.  Defendant Faith makes the same arguments

26

defendant Metcalf makes in support of his qualified immunity motion.  For example, Defendant

Faith argues that he had limited involvement in the investigation and arrest of Westerfield.

According to defendant Faith, he had no involvement in two of the three Mansfield drug buys.

With respect to the third buy, defendant Faith worked the cobble phone and took Bray's

statement.  Defendant Faith did not identify Westerfield or testify before the grand jury or at

trial. Defendant Faith did have some involvement in the investigation and arrest with regard to

Count 30.  According to defendant Faith, Westerfield fails to point to any alleged constitutional

violation stemming from the investigations and arrests.  Defendant Faith further argues that

Westerfield's acquittal on the Mansfield drug charges precludes a *Brady* violation.  Defendant

Faith further argues that Westerfield spent no additional time in jail as a result of any action by

defendant Faith.

In response, Westerfield argues that defendant Faith engaged in a conspiracy with respect

to the Mansfield defendants.  Westerfield points out that defendant Faith knew that Bray tried to

keep drugs from at least one deal and that he knew of some of the false reporting that occurred.

Westerfield also argues that defendant Faith knew of the inconsistencies between the recordings

of the drug deals and the actual events.  He further argues that defendant Faith knew that Bray

stole money from the DEA and failed to disclose this "impeaching" evidence.  According to

Westerfield, defendant Faith knew of irregularities that occurred with respect to the alleged drug

deals involving Roosevelt Williams and Danny Brown, but failed to disclose the information.

Upon review, the Court finds that defendant Faith is entitled to qualified immunity.

Westerfield fails to point to any alleged constitutional violation resulting from his investigation

and arrest for either the Mansfield drug charges or Count 30.  Westerfield does not even mention

his own investigation and arrest.  As set forth above, even if a conspiracy existed, Westerfield must nonetheless establish that some member of the conspiracy violated Westerfield's constitutional rights in some way.  Having failed to address any alleged constitutional violation stemming from Westerfield's investigation and arrest, defendant Faith is entitled to qualified immunity.

Westerfield does argue that defendant Faith engaged in *Brady* violations.  Defendant Faith correctly notes that no *Brady* violation occurs as a result of any Bray-related charges, as the jury acquitted Westerfield of those claims.  With regard to any alleged *Brady* violation stemming from Count 30, the Court finds that Westerfield fails to present any evidence or argument suggesting that defendant Faith knew of defendant Metcalf's misstatements.  Nor does Westerfield point to any other allegedly exculpatory or impeaching information in defendant Faith's possession.  Westerfield makes much of the fact that defendant Faith allegedly possessed a wealth of *Brady* evidence relating to Bray.  That information, however, is inapplicable to Count 30 as Bray had nothing to do with that charge.  All of the Bray-related evidence relates to the counts for which Westerfield was acquitted.

Accordingly, defendant Faith is entitled to qualified immunity for all constitutional violations asserted by Westerfield.  The state law claims, however, remain pending.

<u>Defendant Mayer</u>

Defendant Mayer is a sergeant with the RCSO.  Defendant Mayer makes the same arguments as the other RCSO defendants.  Although defendant Mayer had some involvement in Westerfield's investigation and arrest, the involvement was minimal and defendant Mayer never identified Westerfield in connection with any of the Mansfield drug buys.  In response,

28

Westerfield indicates that defendant Mayer oversaw Bray as an informant and knew about false reporting.  He further claims that defendant Mayer never confirmed addresses or alerted anyone to inconsistencies with drug weights.  Westerfield also argues that defendant Mayer found drugs hidden in Bray's vehicle, but never told anyone.  According to Westerfield, this information is "powerful" *Brady* material.

For the same reasons set forth above with respect to defendant Faith, defendant Mayer is entitled to qualified immunity.  Westerfield fails to identify how his constitutional rights were violated with respect to his investigation and arrest for any of the charges.  Nor does Westerfield point out how any other defendant allegedly violated his constitutional rights in that regard. Rather, the only constitutional right Westerfield discusses relates to alleged *Brady* violations. However, all of the alleged *Brady* violations involve Bray-related information and Westerfield was acquitted of those charges.  With respect to Count 30, Westerfield fails to present any evidence or argument suggesting that defendant Mayer knew of defendant Metcalf's misstatements.

Accordingly, defendant Mayer is entitled to qualified immunity.  The state law claims remain pending.

Discovery and Rule 56(f) affidavit

Westerfield argues that the Court cannot rule on the pending motions without allowing him additional discovery.  In support of his argument, he attaches an affidavit from his counsel outlining what Westerfield expects additional discovery will show.  This Court previously ruled on Westerfield's request for additional discovery.  In doing so, the Court noted that Westerfield possesses over 4,000 pages of trial transcript and more than 22,000 pages of exhibits from

defendant Lucas's criminal trial.  The exhibits include the following: the entire internal files of the United States Attorneys Office in Cleveland, United States Drug Enforcement Administration, and Richland County Sheriff's Office.  In addition, all investigative reports of the undercover transactions and proffers of the Mansfield defendants, statements of Bray relating to the Westerfield deals, all audio and video recordings of the Mansfield transactions, as well as transcripts of the recordings, have been provided to plaintiff.  Even so, the Court permitted Westerfield to propound 20 written interrogatories to each defendant and depose defendant Ansari, who did not testify at defendant Lucas's criminal trial.  Westerfield fails to establish what additional discovery he needs in order to oppose the pending motions.  The Sixth Circuit charged this Court with fashioning an appropriate remedy and to allow some discovery related solely to the issue of qualified immunity.  This Court complied and Westerfield obtaining a significant amount of information.  Westerfield fails to show what, if any, additional information will establish.[21]  Accordingly, Westerfield's request for additional discovery is denied.

### **CONCLUSION**

For the foregoing reasons, the motions filed by defendant Lucas and defendant Metcalf are GRANTED in PART and DENIED in PART.  These defendants are entitled to qualified immunity with respect to all alleged constitutional violations except Westerfield's *Brady* claim related to Count 30.  The motions filed by defendants Cross, Ansari, Faith, and Mayer are GRANTED as these defendants are entitled to qualified immunity with respect to all alleged

---

[21]    Westerfield notes that he makes this argument, in part, to preserve his right to appeal the Court's discovery Order.  In that vein, Westerfield acknowledges that the affidavit attached to plaintiff's brief is identical to the affidavit already consider by the Court in fashioning a discovery plan.

constitutional violations.  Having substituted the United States as the party in interest with respect to the state law claims, defendants Cross and Ansari are no longer parties to this action. The state law claims remain pending against defendants Metcalf, Faith, and Mayer.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge


Dated: 5/12/11