**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Jason Westerfield,** | ) | **CASE NO. 07 CV 3518** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **United States of America, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff's Motion to Amend his Complaint (Doc. 192). This is a civil rights case. For the reasons that follow, the motion is DENIED.

**FACTS**[1]

Plaintiff, Jason Westerfield, brings this action against defendants, United States of

---

[1] The facts have been presented on numerous occasions throughout this litigation. The Court presumes that the readers are well aware of the operative facts and will not fully explain each detail unless necessary for a resolution of the instant motion.

1

America[2], Lee Lucas, Robert Cross, Richland County, Chuck Metcalf, Matt Mayer, Larry Faith, and Jamal Ansari. Lucas, Cross, and Ansari were considered federal employees at the time of the alleged wrongdoing, while Metcalf, Mayer, and Faith were employed by Richland County. On August 8, 2008, this Court granted qualified immunity to all defendants on the federal claims. Plaintiff filed a motion for reconsideration and presented new information relevant to the issues. The Court denied the motion on the grounds that the information could have been presented earlier. Plaintiff appealed and the Sixth Circuit reversed on the grounds that in the "interests of justice," the Court should have considered the information even though it could have been presented earlier. On remand, defendants again moved for qualified immunity. The Court granted qualified immunity to defendants Lucas and Metcalf on all claims except plaintiff's *Brady* claim related to "Count 30." The Court granted qualified immunity to the remaining defendants, *i.e.*, Cross, Ansari, Faith, and Mayer, on all federal claims. The parties did not address the state law claims. Because Cross and Ansari are federal employees, the United States was substituted as the defendant and these two individuals are no longer defendants in this case. The state law claims, *i.e.*, intentional infliction of emotional distress and malicious prosecution, remained pending.

Defendants Lucas and Metcalf appealed the Court's denial of qualified immunity with respect to the *Brady* violation. The Sixth Circuit affirmed this Court's decision. Thereafter, Faith and Mayer moved for summary judgment on the state law claims. Faith and Mayer argued

---

[2]   The United States was originally dismissed as a defendant. Plaintiff later refiled his claims against the United States in a new matter. The Court consolidated the two actions on November 12, 2010. Plaintiff also originally named the City of Mansfield, but voluntarily dismissed this defendant on January 8, 2008.

that the Court's qualified immunity ruling necessarily foreclosed the state law claims. In part, these defendants argued that it was "reasonably clear" that plaintiff intended to assert a Section 1983 claim for malicious prosecution. Thus, according to Faith and Mayer, the Court's grant of qualified immunity on this claim would prevent a corresponding malicious prosecution claim grounded in state law. This Court rejected the argument and noted the following:

> Plaintiff indicates that whether plaintiff "could have stated a federal [claim] for malicious prosecution" is not the issue and that plaintiff is the "master of his claim." (Doc. 152 at n. 2). Plaintiff further indicates that defendants' reliance on federal law for his malicious prosecution claim is misplaced because "his claim is governed by state law." (Id. at n. 4).

The Court relied on plaintiff's representations that the malicious prosecution claim was asserted under state–not federal–law in concluding that the ruling on qualified immunity does not foreclose the state law malicious prosecution claim. Moreover, none of defendants who sought qualified immunity sought qualified immunity for a "malicious prosecution" claim. Therefore, the Court did not address this "claim" in its Opinion. The Court then concluded that Faith and Mayer failed to point to evidence or other legal reasons why the claims failed as a matter of law.

The United States also moved to dismiss the state law claims. The government argued that the "discretionary function exception" to the waiver of sovereign immunity applies to this case. The Court rejected the argument. The Court further held that plaintiff failed to properly plead a conspiracy claim. The Court, however, determined that neither dismissal nor summary judgment was appropriate with respect to the state law claims for malicious prosecution and intentional infliction of emotional distress.[3]

---

[3] The government also argued for the dismissal of other claims, which plaintiff conceded.

Accordingly, the remaining claims in this case are as follows: a *Brady* violation claim against defendants Lucas and Metcalf, and state law claims for malicious prosecution and intentional infliction of emotional distress against defendants United States, Metcalf, Faith, Mayer, and Richland County.

After the Sixth Circuit affirmed this Court's qualified immunity ruling, the Court held a status conference on August 3, 2012. At the status conference, the Court set a discovery cutoff of February 18, 2013. Since the initial status conference, the Court held three additional conferences, the most recent having been held on May 6, 2013. The Court set a final pretrial date of October 28, 2013, and a trial date of November 4, 2013. On May 29, 2013, defendants filed a total of five summary judgment motions. Nearly a month later, plaintiff sought leave to amend the complaint. According to plaintiff, documents turned over by "defendants" on March 20, 2013 demonstrate that representations made by "defendants" as to the scope of the previously produced documents were false. Plaintiff now seeks to add a myriad of Fourth Amendment claims. Previously dismissed defendant Cross opposes the motion, as do defendants United States, Metcalf, Faith, Mayer, and Lucas. In addition, non-party Tom Verhiley opposes the motion.

## **ANALYSIS**

Under Federal Rule of Civil Procedure 15(a) leave to amend a pleading shall be freely given "when justice so requires." Fed. R. Civ. Pro. 15(a); *See also Wade v. Knoxville Utilities Board*, 259 F.3d 452 (6th Cir. 2001). In determining whether to grant leave to amend, this Court must consider several factors. "Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failures to cure deficiencies by previous amendments, undue

4

prejudice to the opposing party, and futility of amendment are all factors which may affect the decision." *Id*. at 458. To deny a motion for leave to amend, a district court cannot base its decision on delay alone and, instead, must determine whether the amendment will cause significant prejudice to the nonmoving party. *Duggins v. Steak 'N Shake*, 195 F.3d 828, 834 (6th Cir. 1999). However, when an amendment is sought at a late stage in the litigation, there is an increased burden to show justification on the part of the party requesting the amendment. *Wade*, 259 F.3d at 459; *See also Duggins*, 195 F.3d at 834.

Here, plaintiff argues that leave to amend should be granted to permit him to add Fourth Amendment claims for: malicious prosecution, unlawful detention, fabrication of evidence, and conspiracy to deny Fourth Amendment rights. Plaintiff argues that "defendants" previously informed the Court that they produced "the entire internal files of the United States Attorney's Office in Cleveland, United States Drug Enforcement Administration, and Richland County Sheriff's Office." According to defendants, these documents were part of the trial exhibits introduced at defendant Lucas's criminal trial. Plaintiff argues that "defendants" tendered a new set of documents on March 20, 2013. According to plaintiff, these documents contain a wealth of new evidence, which supports the assertion of Fourth Amendment claims. Plaintiff also claims that the documents "should have been included in defendant's original tender." In other words, defendants misinformed both plaintiff and the Court by stating that the files of various governmental offices were included as trial exhibits.

In response, defendants make a number of arguments. Defendant Cross argues that the only information about him contained in the "new" documents consists of Cross's discipline for "two ministerial administrative violations relating to drug buys not involving Westerfield."

5

According to Cross, he would suffer prejudice if the Court allowed plaintiff to add him back into this case two years after receiving qualified immunity. He further argues that he never produced any documents to plaintiff and, therefore, even if documents were withheld, it had nothing to do with Cross. Cross also argues that amendment would be futile. According to Cross, the DEA was not involved in plaintiff's investigation, search, or arrest and plaintiff fails to point to anything in the "new" documents that would alter this fact. Cross claims that plaintiff fails to point to any document allegedly withheld by any party that comes from the Richland County files. Thus, whatever "new" information exists, it is not relevant to this case. Cross also argues that the motion for leave to amend is completely devoid of any discussion of Cross.

Non-party Tom Verhiley argues (through counsel for Cross) that he was never a party to this case. As such, he could not be responsible for any non-disclosure of documents. Moreover, he claims he would suffer prejudice if he were to be added so many years after plaintiff filed this case. Verhiley believes that plaintiff erred in referencing him in the motion. According to Verhiley, a nearly identical motion was filed in a different case pending in this district. Verhiley believes that plaintiff "cut and pasted" the brief without realizing that Verhiley was not a named defendant in *this* action. In the reply brief, plaintiff acknowledges that he did not intend to name Verhiley in this action. Accordingly, Verhiley will not be added as a defendant.

The United States argues that it cannot be held liable for Fourth Amendment violations of its employees. Thus, to the extent defendant is attempting to name the United States as a defendant to the proposed claims, the amendment is futile. The United States also claims that it did not withhold documents. According to the United States, this case is one of many cases pending in this district. It appears that counsel for plaintiff is counsel for eleven other plaintiffs.

According to the United States, all parties understood that the initial voluntary production undertaken by the government included the trial transcript and exhibits from the Lee Lucas trial. The United States claims that plaintiff propounded additional document requests during discovery. It appears that similar requests were made in the "Danny Lee Brown" case. A global resolution was reached in both cases and, by agreement, the United States agreed to produce a number of documents, including the final DOJ OIG/OPR investigative report, dated January 21, 2011, Lee Lucas' Official Personnel File from 2010 to 2012, and a number of other investigative reports and personnel files. A consent motion was filed in the "Danny Lee Brown" case on February 1, 2013. Thus, according to the government, all parties understood what documents had previously been produced and what documents were outstanding. As such, plaintiff cannot now be heard to complain that it relied on a faulty representation by the government regarding the extent of the initial production. Regardless, the government claims that the "new evidence" is not new at all– rather it is cumulative of evidence already possessed by plaintiff. Moreover, none of the evidence relates to Westerfield at all.

Defendant Metcalf also argues that none of the evidence is "new." In fact, he points to several instances in which plaintiff previously cited nearly the exact same information in various court documents. Metcalf also points out that plaintiff fails to attach a proposed amended complaint. In addition, Metcalf claims he will be prejudiced by any late amendment. Metcalf also points out that none of the "new evidence" relates to plaintiff.

Defendants Faith and Mayer argue that none of the documents come from Richland County and the evidence is at most cumulative of the "mountain" of evidence plaintiff already possessed. In addition, these defendants argue that it is absurd to think that plaintiff was able to

7

state a claim for state law malicious prosecution, but unable to state a federally based malicious prosecution claim until after learning of the new evidence. Defendants also argue that even assuming some piece of evidence is "new," plaintiff waited too long to inform the Court. Defendants point out that plaintiff received the documents at issue on March 20, 2013 and did not seek leave to amend until over three months later. Defendants also claim that much of the specific evidence plaintiff claims is "new," was already in plaintiff's possession and relied on by plaintiff in various court documents.

Defendant Lucas joins in the arguments made by defendant Cross and the United States.

In reply, plaintiff argues that the government acted deceptively in indicating that the trial exhibits included the complete files from various governmental agencies. In addition, plaintiff indicates that it does not dispute that the government fully complied with its obligations under the second disclosure. Rather, it is the second disclosure that revealed that the government misrepresented the extent of its initial disclosure. In addition, plaintiff argues that it was a strategy decision to forego assertion of a malicious prosecution claim based on federal law and, instead, rely only on a state law claim.

Upon review, the Court denies plaintiff's motion for leave to amend. As an initial matter, the Court finds that plaintiff unduly delayed seeking leave to amend the complaint. Although plaintiff claims that the government deceptively informed plaintiff that the initial document production included all of the files of various governmental agencies, plaintiff knew of the existence of the very documents he relies on now no later than February 1, 2013. At that time, the parties entered a consent motion for the production of these documents in the "Danny Lee Brown" case. The motion contains a list of relevant documents and the documents are identified

by title. At this point, discovery in this case was still ongoing. Yet, plaintiff filed no motion alerting the Court to any discovery dispute or irregularity. Moreover, by March 20, 2013, plaintiff was in possession of the documents. Yet, plaintiff waited until a month after the filing of *five* summary judgment motions to seek leave. In all, plaintiff waited until over three months after receiving the documents before seeking leave to amend. Given the extensive procedural history of this almost six-year old case, plaintiff's delay counsels against allowing an amendment.

Even assuming the government misrepresented the extent of its initial disclosure[4], the Court finds that an amendment would be futile as much of the evidence plaintiff points to was available in some form or another long before plaintiff sought leave to amend. By way of example only, plaintiff claims that an audio transcription, in which Mayer allegedly states that he will erase part of the recording, is "new evidence." Mayer, on the other hand, claims that this very recording was an exhibit at Lucas's criminal trial and was turned over by the government to the Mansfield plaintiffs. Defendant Mayer points out that a plaintiff in a different case expressly relies on the recording in opposing summary judgment. Plaintiff does not respond to this argument. Not only is it apparent that some of the "new" evidence is not actually new, but

---

[4] Plaintiff does not successfully demonstrate that the records disclosed (including those that post-date the Lucas trial) should have been included in the initial disclosure. For example, the final DOJ OIG/OPR investigative report, which plaintiff heavily relies on in his motion, is dated January 21, 2011, nearly a year after the Lucas trial ended. Obviously, this document could not have been disclosed as part of the initial production as it does not appear that it existed at the time. Plaintiff makes no attempt whatsoever to point out which documents should have been disclosed as part of the initial production.

9

plaintiff does not cite the Court to any specific piece of evidence that is different in kind from the evidence previously disclosed. Rather, as many defendants argue, the evidence is cumulative of all previously disclosed evidence. Moreover, all of the evidence is wholly unrelated to plaintiff. Rather, the evidence involves defendants' actions as they pertain to *other* individuals.

Plaintiff's motion also fails because plaintiff does not tie any of the evidence to any proposed claim or any particular defendant. In fact, plaintiff does not provide the Court with a proposed amended complaint. It is not clear whether plaintiff seeks to assert all of the Fourth Amendment claims against all of the defendants. Rather, plaintiff generically cites to the existence of evidence (much of which is simply cumulative of other evidence) and makes sweeping conclusions. For example, plaintiff argues as follows:

> Additionally, numerous defendants and law enforcement witnesses have now accused Lucas of falsely claiming in his reports that they could corroborate Bray's claims, when the witnesses were not present or denied being able to offer any corroboration. All of this new evidence would support allegations that Lucas fabricated probable cause in this case and conspired with Bray and the other defendants to frame plaintiff.

Plaintiff, however, wholly ignores that the fact that, unlike in most of the Mansfield cases, the DEA and defendant Lucas were not yet involved at the time plaintiff was arrested. Therefore, defendant Lucas had nothing to do with establishing probable cause against Westerfield.[5] Accordingly, an amendment would prove futile. Plaintiff mentions no other defendants in his discussion of "fabricating probable cause."

The Court further rejects plaintiff's argument that his tactical decision not to assert a

---

[5] These types of errors likely stem from the fact that plaintiff's counsel filed nearly identical briefs in at least several cases in which they represent other Mansfield plaintiffs. As noted, however, this case is different than many of the others due to the timing of the involvement of the DEA.

10

Fourth Amendment claim for malicious prosecution should be blamed on defendants. Here, plaintiff's state law claim for malicious prosecution remains pending. Plaintiff wholly fails to present any argument as to why he did not assert a corresponding Fourth Amendment claim for malicious prosecution in the first place. There is nothing suggesting that the claim only became viable as a result of the new evidence.

Not only does plaintiff fail to establish that an amendment is warranted on the basis of "new evidence," the Court finds that defendants would suffer severe prejudice should an amendment be allowed. This case was filed nearly six ago and has been up on appeal twice. Discovery is closed and five summary judgment motions are pending. A trial date has been set. To begin anew at this late juncture would be prejudicial to defendants. Accordingly, for this additional reason, the Court finds that leave to amend is not warranted.

### **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion to Amend his Complaint is DENIED.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 7/26/13