**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Jason Westerfield, | ) | **CASE NO. 1:07 CV 3518** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| United States of America, *et al.*, | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| Defendants. | ) | |

### <u>INTRODUCTION</u>

This matter is before the Court upon Defendant Lee Lucas' Motion for Summary

Judgment Dismissing Plaintiff Westerfield's Complaint (Doc. 184); the United States' Motion to

Dismiss and for a Summary Judgment (Doc. 186); Defendant Charles Metcalf's Motion for

Judgment on the Pleadings or Alternatively for Summary Judgment (Doc. 187); the Renewed

Motion of Defendants Larry Faith and Matthew Mayer for Summary Judgment on Plaintiff's

State-Law Claims (Doc. 188); and the Motion of Defendant Richland County for Summary

Judgment (Doc. 189).  This is a civil rights case.  For the reasons that follow, the motions filed

1

by the United States (Doc. 186), Charles Metcalf (Doc. 187), Larry Faith and Matthew Mayer (Doc. 188), and Richland County (Doc. 189) are granted in their entireties.  The motion filed by defendant Lucas (Doc. 184) is GRANTED in PART and DENIED in PART.  The sole remaining claim in this case is plaintiff's *Brady* claim as it relates to Count 30 filed against defendant Lucas.

### FACTS

This Court has previously recited the relevant facts on numerous occasions.  Moreover, the parties themselves chose not to fully develop factual statements.  Accordingly, the Court will include an abbreviated version of the facts.  And, as necessary, the Court will address disputed facts or facts not previously addressed.

Plaintiff, Jason Westerfield, brings this action against defendants, United States of America[1], Lee Lucas, Robert Cross, Richland County, Chuck Metcalf, Matt Mayer, Larry Faith, and Jamal Ansari.  Lucas, Cross, and Ansari were considered federal employees at the time of the alleged wrongdoing, while Metcalf, Mayer, and Faith were employed by Richland County.  This is a civil rights case.

In February of 2005, the Richland County Sheriff's Office ("RCSO") registered and recruited Jerrell Bray as an informant and used him to make drug buys from drug traffickers in Mansfield.  In addition, the Metrich Unit, which is a task force of federal and local agencies

---

[1]     The United States was originally dismissed as a defendant. Plaintiff later refiled his claims against the United States in a new matter.  The Court consolidated the two actions on November 12, 2010.  Plaintiff also originally named the City of Mansfield, but voluntarily dismissed this defendant on January 8, 2008.

designed to investigate and prosecute drug crimes in Mansfield, registered Bray as an informant.

Bray, on behalf of the authorities, purportedly engaged Westerfield in drug buys on February 15, March 12, and March 15, 2005.  After these buys, Bray identified Westerfield as the purchaser.

Defendant Faith is a Captain with the RCSO.  According to defendant Faith, he had no involvement in the February 15th or March 12th controlled buys.  With regard to the March 15th buy, defendant Faith worked the "cobble phone" from the RCSO.  Defendant Faith took Bray's statement after he returned from the buy.  He avers that he had no reason to believe that Bray fabricated evidence and he had information from several other sources that supported Bray's reliability.

Defendant Mayer is a Sergeant with the RCSO.  He had some degree of involvement in all three controlled buys.  With regard to the February 15th buy, defendant Mayer provided surveillance and prepared a confidential report.  On March 12th, defendant Mayer monitored the cobble phone from the RCSO during the buy.  He prepared confidential reports regarding the money given to Bray to be used for the buy.  Thereafter, he conducted a followup interview of Bray regarding the March 12th buy.  On March 15th, defendant Mayer again provided surveillance for the buy and prepared a follow up report regarding the events of that date. Defendant Mayer's report indicates as follows:

> ...As we went past the target house we seen [sic] a red Grand Am parked on the east side of Adams Street facing north.  This was the vehicle that Jason Westerfield was driving. Patrol Officer's [sic] Mayer and George followed [Bray] to the area where Detective Metcalf could see a visual on [Bray] and Westerfield....

> Jason Westerfield left in a red Grand Am.  Supposedly it's his girlfriend's car or a

3

female friend....  Check with Adult Parole Authority.  Jason Westerfield should have some sort of G.P.S. on him, and we will maybe confirm of his whereabouts at the time of the sale of the drugs.

Mayer, however, claims that he never provided an identification of Westerfield.  Rather, the references to "Westerfield" in his report were intended only to mean that "a suspect alleged by someone else to be Westerfield" was identified.  At no point did Mayer expressly identify Westerfield.

Defendant Metcalf is a detective with the RCSO.  Defendant Metcalf "ran the wire" during the March 12th transaction.  With respect to the March 15th buy, defendant Metcalf provided security and surveillance and indicated that he saw a purple car in the area that he believed belonged to Westerfield.

Thereafter, it appears Westerfield was arrested and incarcerated as a result of multiple violations of the conditions of release from a prior felony.[2]  While Westerfield was incarcerated, authorities intercepted phone calls originating from the Richland County Jail.  The calls were between Westerfield and Aisha Ford and Joquoia Ginn.  Based on these phone calls, RCSO obtained a search warrant on April 22, 2005, to search Ginn's residence.  Defendants Faith and Mayer assisted other officers in executing the search warrant and interviewing Ford, Ginn, and Westerfield.  During the search, defendant Metcalf found a box containing crack cocaine.

On August 31, 2005, a federal grand jury indicted Westerfield with being a felon in possession of a firearm.  This charge appears unrelated to the Mansfield drug investigation.

---

[2]     The specific facts are not entirely clear to the Court.  They do not, however, appear to be particularly relevant to the analysis.

4

Westerfield ultimately received a 100-month term of imprisonment on the charge.[3]

Around August of 2005, RCSO requested the assistance of the Drug Enforcement Agency ("DEA") with a suspected drug ring located in Mansfield, Ohio.  Defendants Lucas and Cross prepared paperwork to register Bray as a DEA informant.  Defendant Lucas avers that he did not personally know any of the Mansfield drug defendants, including Westerfield.  Defendant Lucas further avers that his role in the Mansfield drug cases varied.  Sometimes he acted as a surveillance agent or an observer.  Other times he acted undercover and purchased drugs himself.  In addition, Lucas, along with Cross, wrote DEA-6 reports relating to the drug deals.  He, however, was not involved in the investigation of Westerfield, as it predated the DEA's involvement.

Defendants Metcalf, Faith, and Mayer were involved in Westerfield's investigation only as outlined above.

After the DEA became involved, RCSO turned over all of its records on all of the buys, including that of Westefield, to federal authorities.  In November of 2005, a federal grand jury returned a 55-count indictment[4] charging Westerfield and approximately nineteen others with various drug-related counts.  Some of the counts filed against Westerfield stemmed from the three "Bray-related" drug deals.  "Count 30," on the other hand, was based on the intercepted phone calls between Westerfield and Ford and Ginn.  During these phone calls, it appears that Westerfield instructed Ford and Ginn to move the drugs from Ford's residence to Ginn's.

---

[3]     Westerfield originally received 180 months, but after various appeals, the sentence was reduced to 100 months.

[4]     A superseding indictment was later issued.

5

In order to secure the indictment, defendant Lucas testified before the grand jury as a "summary witness."  In other words, he testified regarding all of the drug transactions, even though he was not involved in some of the investigations, including that of Westerfield. Assistant United States Attorney ("AUSA") Serrano determined which charges to include in the indictment.  AUSA Serrano received the reports from RCSO and those reports were used to indict Westerfield.  Defendant Lucas does not specifically recall reviewing the reports, but may have done so in order to ascertain the quantity of drugs and the dates of the purchases.

From December of 2005 through June of 2006, three proffer meetings were held.  In addition to the prosecutors, it appears that defendant Faith participated in some of the meetings.

Prior to Westerfield's trial, the prosecution informed his attorneys that one of Westerfield's co-defendants indicated that Westerfield did not participate in the Mansfield drug cases as alleged in the indictment.  In addition, Westerfield's counsel knew that Westerfield was wearing an electronic monitoring device at the time of the alleged drug buys involving Bray. Defendant Lucas learned of this fact shortly before trial and raised the issue with AUSA Serrano. Defendant Lucas questioned how the government would "get around" the electronic monitoring "alibi."  AUSA Serrano continued with the prosecution nonetheless.

In July of 2006, a trial proceeded against Westerfield and other Mansfield co-defendants, including Dwayne Nabors.  Defendant Metcalf testified against Nabors and Westerfield. Defendant Lucas testified for the government, but his testimony related solely to Westerfield's co-defendants, including Nabors.  Defendants Faith and Mayer did not testify. Defendant Lucas sat at the prosecutor's table throughout the trial.

6

At the conclusion of the trial, the jury acquitted Westerfield of all Mansfield drug charges.  The jury convicted Westerfield on Count 30, which stemmed from the intercepted jail telephone calls and subsequent search.  Thereafter, on March 8, 2007, the court sentenced Westerfield to 360 months for his conviction on Count 30.

In late 2007, Bray was charged with various counts of civil rights violations and perjury for his role in the Mansfield drug case.  In essence, Bray repeatedly framed innocent individuals by identifying them as participants in the drug conspiracy.  Bray entered into a plea agreement with the government and received a sentence of 165 months in prison.

According to Westerfield, defendants knew that Bray was falsely identifying the Mansfield defendants.  During the course of the investigation, Bray routinely dialed the same phone numbers, although he claimed to be calling multiple unrelated suspects, called one suspect while claiming to be speaking to a different suspect, and had a phone encounter different from the encounter documented in the reports.  Defendant Metcalf supervised the calls made by Bray.  Bray also stole drugs provided to him by the DEA.  Discrepancies between the weights provided to him and the weights sold by him occurred.  At one point, Bray was "arrested" after drugs were discovered behind a plate in his steering wheel.  Defendant Metcalf intervened on Bray's behalf and he was not prosecuted.   At one point, Bray informed agents of a specific amount he allegedly paid during a drug buy, but in actuality he paid less.  He hid the extra money in his radio.  Defendant Faith monitored the transaction on the cobble phone and was also present when agents later discovered the money in his car.  None of this information was disclosed to Westerfield's defense counsel.

7

In May of 2009, defendant Metcalf was charged with a criminal civil rights violation for his actions and testimony pertaining to Westerfield's co-defendant, Dwayne Nabors.  Metcalf pled guilty to presenting false evidence against Nabors at trial.  Metcalf admits that he falsely identified Nabors as a participant in a drug deal.  Metcalf indicated that he testified falsely because he believed that was "what everybody else was going to testify to."  He indicated that his testimony at the Nabors trial consisted of a "regurgitation" of the DEA report.

Thereafter, the government indicted defendant Lucas for obstruction of justice, false statement, perjury, and deprivation of civil rights for his role in the Mansfield drug case. According to the indictment, defendant Lucas knew of Bray's actions, covered up those actions, and testified falsely against many of the defendants in the Mansfield drug case.  Defendant Lucas was not indicted for any role in Westerfield's criminal case.  After a lengthy trial at which defendant Metcalf testified for the government, a jury acquitted defendant Lucas of all charges. Prior to his indictment, defendant Lucas prepared a memorandum, which he intended to use to assist people in coordinating their stories.  He now knows that statements contained in the memorandum are not true.

After discovering that Bray fabricated evidence, the government voluntarily dismissed many of the Mansfield defendants.  The government did not, however, dismiss the case against Westerfield.  According to the government, the only count on which Westerfield was convicted, *i.e.*, Count 30, was not tainted by Bray's actions.

On November 9, 2007, Westerfield filed this lawsuit.  The complaint does not contain separately identifiable causes of action.  It appears, however, that Westerfield asserts claims for

8

violation of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.  Westerfield further

asserts claims for malicious prosecution and intentional infliction of emotional distress.  In

addition, Westerfield alleges that defendants Lucas and Cross subjected him to judicial

proceedings without probable cause.  It appears that Westerfield alleges that defendants

conspired to deprive plaintiff of his constitutional rights.  Westerfield also alleges that Richland

County maintained a policy permitting the constitutional violations and failed to train its

employees.

In April of 2008, the United States moved to be substituted in place of the individual

federal defendants, *i.e.*, defendants Lucas, Cross, and Ansari, with respect to Westerfield's

common law tort claims.  The Court granted that motion.  Thereafter, the individual defendants

moved for summary judgment on the grounds of qualified immunity.  In response, Westerfield

provided a Rule 56(f) affidavit from his attorney arguing that he needed discovery to respond to

the motions.  The Court concluded that the affidavit fell short of establishing that additional

discovery would assist him in defending against the motions.  Accordingly, the Court granted the

summary judgment motions.  Thereafter, Westerfield filed a motion to reconsider and attached a

new Rule 56(f) affidavit.  The Court denied the motion to reconsider on the basis that the

arguments and evidence in the affidavit were available to Westerfield at the time the original

affidavit was submitted.  As such, his failure to timely submit a proper Rule 56(f) affidavit did

not warrant reconsideration.

Westerfield appealed and the Sixth Circuit ruled that the 'interests of justice' warranted

consideration of the supplemental Rule 56(f) affidavit.  The Sixth Circuit remanded the matter

and indicated that the Court should fashion a discovery order limited to the issue of qualified immunity and further indicated that defendants could renew their motions once limited discovery is complete.

On July 19, 2010, Westerfield filed a motion to vacate his conviction and sentence with respect to Count 30 in the Mansfield case. In response, the government consented to the motion. The government indicated that the prosecution failed to disclose *Brady/Giglio* material at Westerfield's trial.  Specifically, the government recognized that defendant Metcalf is a convicted perjurer.  Metcalf, as a member of the prosecution team, failed to disclose this impeaching information.  The government conceded that Metcalf was the only witness to testify about finding the box that contained the crack cocaine.  The government then determined that it would be unable to establish Westerfield's guilt beyond a reasonable doubt as Metcalf's testimony would be required for a conviction.  As the government would "decline to call a convicted perjurer to the stand," Metcalf's testimony would not be used.  As such, the government requested that the court dismiss Count 30.  (*See*, Case No. 05 CR 537, Doc. 981).

After remand, defendants again moved for qualified immunity.  The Court granted the motions in part.  In that Order, the Court determined that defendants Cross, Ansari, Faith, and Mayer were entitled to qualified immunity with respect to all federal claims.  Having substituted the United States as the party in interest with respect to the state law claims asserted against defendants Cross and Ansari, those two defendants were dismissed from this case.  The Court also granted qualified immunity to defendants Metcalf and Lucas on all federal claims with the exception of Westerfield's *Brady* claim as it relates to Count 30.  Again, having substituted the

10

United States as a defendant, the state law claims asserted against defendant Lucas were

dismissed.  The state law claims, however, remain pending against defendants Faith, Mayer, and

Metcalf.  In addition, the state law claims originally asserted against defendants Ansari, Cross,

and Lucas remain pending against the United States.  Further, all claims remain pending against

defendant RCSO.

Defendants Lucas and Metcalf appealed this Court's qualified immunity ruling with

respect to Count 30.  The Sixth Circuit affirmed the Court's decision.

Thereafter, Faith and Mayer moved for summary judgment on the state law claims.  Faith

and Mayer argued that the Court's qualified immunity ruling necessarily foreclosed the state law

claims.  In part, these defendants argued that it was "reasonably clear" that plaintiff intended to

assert a Section 1983 claim for malicious prosecution.  Thus, according to Faith and Mayer, the

Court's grant of qualified immunity on this claim would prevent a corresponding malicious

prosecution claim grounded in state law.   This Court rejected the argument and noted the

following:

> Plaintiff indicates that whether plaintiff "could have stated a federal [claim] for malicious
> prosecution" is not the issue and that plaintiff is the "master of his claim."  (Doc. 152 at
> n. 2).  Plaintiff further indicates that defendants' reliance on federal law for his malicious
> prosecution claim is misplaced because "his claim is governed by state law."  (Id. at n. 4).

 The Court relied on plaintiff's representations that the malicious prosecution claim was

asserted under state–not federal–law in concluding that the ruling on qualified immunity does

not foreclose the state law malicious prosecution claim.  Moreover, none of defendants who

sought qualified immunity sought qualified immunity for a "malicious prosecution" claim.

Therefore, the Court did not address this "claim" in its Opinion.  The Court then concluded that

11

Faith and Mayer failed to point to evidence or other legal reasons why the claims failed as a matter of law.

The United States also moved to dismiss the state law claims.  The government argued that the "discretionary function exception" to the waiver of sovereign immunity applies to this case.  The Court rejected the argument.  The Court further held that plaintiff failed to properly plead a conspiracy claim.  The Court, however, determined that neither dismissal nor summary judgment was appropriate with respect to the state law claims for malicious prosecution and intentional infliction of emotional distress.[5]  In the motions now pending before this Court, plaintiff concedes his claims for intentional infliction of emotional distress, as well as his *Monell* claim against RCSO.

Accordingly, only two claims remain pending.  A federal constitutional claim is pending against defendants Lucas and Metcalf and a state-law claim for malicious prosecution is pending against defendants Metcalf, Faith, Mayer, RCSO and the United States.[6]

All defendants move for summary judgment.  In addition, the United States alternatively moves to dismiss the case and defendant Metcalf alternatively moves for judgment on the pleadings.  These motions are opposed by plaintiff.

**STANDARDS OF REVIEW**

1. Summary judgment

---

[5]     The government also argued for the dismissal of other claims, which plaintiff conceded.

[6]     The claim against the United States is filed pursuant to the Federal Tort Claims Act. This malicious prosecution claim is based on the alleged wrongdoing of Cross, Ansari, and Lucas.

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010, provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed .R.Civ.P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed-show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting summary judgment remains unchanged" and the amendment "will not affect continuing development of the decisional law construing and applying" the standard.  See, Fed.R.Civ.P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the

absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its resolution will affect the outcome of the lawsuit."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury."  *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

2.  Dismissal

When a court's subject matter jurisdiction is challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party seeking to invoke jurisdiction bears the burden of proof. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Rogers v.*

14

*Stratton*, 798 F.2d 913, 915 (6th Cir. 1986).  This burden is not onerous. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).  The party need only show that the complaint alleges a substantial claim under federal law. *Id.*

A 12(b)(1) motion to dismiss may constitute either a facial attack or a factual attack. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Facial attacks question the sufficiency of the jurisdictional allegations in the complaint. *Id.*  Thus, those allegations must be taken as true and construed in the light most favorable to the nonmoving party. *Id.*  Factual attacks, however, challenge the actual fact of the court's jurisdiction. *Id.*  In such cases, the truthfulness of the complaint is not presumed. *McGee v. East Ohio Gas Co.*, 111 F.2d 979, 982 (S.D. Ohio 2000) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320 (6th Cir. 1990)).  Instead, the Court may weigh any evidence properly before it. *Morrison v. Circuit City Stores, Inc.*, 70 F.Supp.2d 815, 819 (S.D. Ohio 1999) (citing *Ohio Nat'l*, 922 F.2d 320; *Rogers*, 798 F.2d 913).

When presented with a facial attack, the non-moving party "can survive the motion by showing any arguable basis in law for the claim made." *Musson Theatrical*, 89 F.3d at 1248.  Thus, such a motion will be granted only if, taking as true all facts alleged in the complaint, the Court is without subject matter jurisdiction to hear the claim. *Matteson v. Ohio State University*, 2000 WL 1456988 *3 (S.D. Ohio Sept. 27, 2000).

### ANALYSIS

1.  Malicious prosecution[7]

To succeed on a claim of malicious criminal prosecution under Ohio law, a plaintiff must show three elements: (1) malice in instituting or continuing the prosecution, (2) lack of probable

---

[7]    For the sake of clarity, the Court will address this claim first.

15

cause, and (3) termination of the prosecution in favor of the accused.  *Logsdon v. Hains,* 492

F.3d 334, 347 (6th Cir. 2007).  *See also, Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 316

(6th Cir. 2005).  As a general rule, however, "claims for malicious prosecution are not favored at

law because they act as a restraint upon the right to resort to the courts for lawful redress."

*Forehlich v. Ohio Dep't of Mental Health*, 871 N.E.2d 1159, 1162 (Ohio 2007)(internal citation

and quotation omitted).

      With regard to the first element, "if an informer merely provides a statement of his belief

of criminal activity and leaves the decision to prosecute entirely to the uncontrolled discretion of

the prosecutor...the informer is not regarded as having instituted the criminal proceedings."

*Robbins v. Fry*, 594 N.E.2d 700, 701 (Ohio App. 3rd Dist. 1991)(*citing Archer v. Cachat*, 135

N.E.2d 404, 406 (1956)).  Thus, police officers are not considered "instigators" of criminal

prosecutions where they "provide the prosecutor with a full and fair disclosure of all the material

facts as revealed by their investigation...."  *Radvansky*, 395 F.3d at 317 (internal quotation and

citation omitted).

> The test of liability in such an action is: Was defendant actively instrumental in putting
> the law in force?  To sustain the action, it must affirmatively appear as part of [plaintiff's]
> case that the [defendant] was the proximate and efficient cause of maliciously putting the
> law in motion.

*Siegel v. O.M. Scott & Sons Co.*, 56 N.E.2d 345, 347 (Ohio App. 3rd Dist. 1943).  *See also,*

*Bacon v. Kirk*, 2000 WL 1648925 (Ohio App. 3rd Dist. Oct. 31, 2000)(same).

      Here, defendants Faith, Mayer, and Metcalf argue that the federal prosecutor's decision

to seek an indictment against defendant Westerfield on the Bray-related charges insulates them

from liability for malicious prosecution.  Faith and Mayer argue that they had no involvement

with the decision to prosecute Westerfield.  Rather, the reports regarding Westerfield were

prepared months before the DEA's involvement and Faith and Mayer did not approach any prosecutor about filing charges against Westerfield.  In fact, Mayer testified that at the time he wrote the report, Richland County did not even intend to prosecute Westerfield.  Rather, they were interested in speaking to him as a suspect in a murder investigation.  After the DEA took over the case as part of a broader investigation, the reports were turned over to federal agents.  AUSA Serrano did not approach either Faith or Mayer to discuss any potential charges and these defendants did not know what charges were ultimately filed.   They did not testify before the grand jury or at trial.

On the other hand, plaintiff argues that the "RCSO Defendants" provided "false reports" that were integral to the prosecution.  As such, these defendants are considered to have "instituted" charges against Westerfield.  According to Westerfield, the reports offer independent corroboration that Westerfield participated in the drug buys with Bray.  For example, Mayer's report provides "Both Jason Westerfield [and Bray] went into the residence...." and "Detective Metcalf and I...seen [sic] a red Grand Am....  This was the vehicle that Westerfield was driving."  According to Westerfield, defendants now admit that they did not identify Westerfield as the perpetrator.  Westerfield also points out that AUSA Serrano indicated that he relied on the report in determining whether to seek an indictment.  In addition, Westerfield claims that the "RCSO Defendants'" independent corroboration of Bray's identification of Westerfield was critical to the indictment decision.

Upon review, the Court finds that defendants Faith and Mayer are entitled to summary judgment.  As an initial matter, plaintiff groups Faith, Mayer, and Metcalf together in the brief in opposition.  Yet, the only report referenced by plaintiff was prepared by defendant Mayer.

Accordingly, plaintiff wholly fails to point to any evidence demonstrating that defendant Faith "instituted or continued" the proceedings.  Moreover, the Court finds that Mayer's report is insufficient to create a triable issue of fact as to whether Mayer satisfies the first element.  Mayer testified that Richland County did not intend to prosecute Westerfield for the Bray-related drug buys.  And, in fact, Richland County did *not* prosecute Westerfield.  Many months passed before AUSA Serrano decided to indict Westerfield under federal law as part of an alleged conspiracy.  Yet, neither Mayer nor Faith testified before the grand jury, discussed the charges with AUSA Seranno, testified at trial, or in way had any involvement with the decision to prosecute or to continue the prosecution.  Moreover, Mayer's report fully discloses that Westerfield was subject to an ankle monitoring device at the time of the alleged buys.  Accordingly, based on these facts, the Court finds that a reasonable juror could only conclude that Faith and Mayer did not "maliciously institute or continue the prosecution" of Westerfield.[8]

With regard to defendant Metcalf, plaintiff makes the same arguments set forth above.  In fact, plaintiff does not distinguish defendant Metcalf from any of the other RCSO defendants and lumps him in with defendants Faith and Mayer.  Thus, for the same reasons set forth above, defendant Metcalf is entitled to summary judgment on the malicious prosecution claim.  In addition, although Mayer's report contains information purportedly from defendant Metcalf, this

---

[8]   Having concluded that there is insufficient proof to establish the first element of a malicious prosecution claim, the Court need not reach the issue of whether probable cause existed to support the charges.  See, *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, (6th Cir. 2005)(question of fact existed as to whether probable cause existed to support charges, but defendants nonetheless entitled to summary judgment on malicious prosecution claim as they did not 'institute or continue' prosecution").

18

report is inadmissible hearsay with regard to this defendant.  Although an argument could be made that defendant Metcalf differs from Faith and Mayer because he testified at Westerfield's trial, the Court will not address this issue since plaintiff did not make this argument.  Moreover, as set forth more fully below, the doctrine of testimonial immunity would preclude a claim for malicious prosecution based on Metcalf's trial testimony.

Because the state law malicious prosecution claim against defendants Faith, Mayer, and Metcalf fails, the claim also fails against RCSO.

The Court will now address whether the United States can be held liable for the state law malicious prosecution claim asserted against defendants Ansari, Cross, and Lucas.  As an initial matter, plaintiff fails to point to any evidence pertaining to defendants Ansari or Cross.  Accordingly, summary judgment in favor of the United States is warranted as it relates to these two defendants.

Turning to defendant Lucas, the United States argues that Lucas did not "initiate or continue" the criminal proceedings against Westerfield.  The United States claims that Lucas was not involved in the decision to indict Westerfield.  In fact, no federal agent was involved in Westerfield's investigation.  And, although agent Lucas testified before the grand jury, AUSA Serrano knew that defendant Lucas's testimony was not based on personal knowledge.  Rather, he testified as a summary witness.  Defendant Lucas did not testify against Westerfield at trial and, although he attended the trial, his role with regard to Westerfield was ministerial in nature.  For example, defendant Lucas coordinated witnesses.  The United States also points out that the evidence in this case shows that defendant Lucas, upon learning that Westerfield was subject to an ankle monitor at the time of the Bray-related drug buys, questioned AUSA Serrano about

Westerfield's alibi.  According to the United States, there is simply no evidence that defendant Lucas "actively insist[ed] upon the prosecutor continu[ing] the criminal proceedings once he learn[ed] that the charge [was] not well-founded.[9]"

In response, Westerfield argues that defendant Lucas was instrumental "to the charges lodged" against him.  AUSA Serrano testified that he conducted no independent investigation and, instead, relied on defendant Lucas when initiating the indictments.  He further testified that defendant Lucas provided all of the information used to support the prosecution. AUSA Serrano relied only on conversations with defendant Lucas and documents provided by him.  Westerfield also points out that Lucas approached AUSA Serrano's office about prosecuting the Mansfield drug cases, including that of Westerfield.  Defendant Lucas actively apprised AUSA Serrano about the status of the various drug buys.  He sat at the trial table at Westerfield's trial and served as AUSA Serrano's "right hand man."  According to Westerfield, defendant Lucas gave "mounds" of false information to AUSA Serrano regarding Westerfield's co-defendants and failed to disclose Bray's known credibility issues.  Westerfield argues that the case was charged as a conspiracy that involved the other co-defendants.  AUSA Serrano testified that had he known of Bray's reliability issues, including that Bray attempted to steal some of the buy money, AUSA Serrano would have instructed the agents to stop using Bray.

Upon review, the Court finds that reasonable minds could only conclude that defendant

---

[9]     The United States makes a number of additional arguments.  For example, it argues that Ohio law bars Westerfield's claims based on grand jury testimony.  In addition, the United States claims that the discretionary function and "intentional tort" exceptions bar the claims.  Because the Court finds that defendant Lucas did not "maliciously institute or continue the prosecution" against Westerfield, the Court will not reach these alternative arguments.

Lucas cannot be liable for malicious prosecution.   Here, the decision to prosecute Westerfield

was left entirely to AUSA Serrano.  It is undisputed that defendant Lucas did not participate in

the investigation of Westerfield.  Therefore, he could not possibly offer any evidence against

Westerfield at trial.  Even a cursory review of the file would alert AUSA Serrano that he needed

to rely on someone other than defendant Lucas to assist him in securing a conviction.  And,

although defendant Lucas testified before the grand jury, it is undisputed that he testified as a

"summary witness."  The reports he provided to AUSA Serrano were not prepared by defendant

Lucas.  Nor did defendant Lucas testify at Westerfield's trial.  Defendant Lucas simply provided

information prepared by other law enforcement officers to the federal prosecutor.  There is no

indication that defendant Lucas insisted on AUSA Serrano prosecuting Westerfield.  And,

although Westerfield argues that the case was charged as a conspiracy, AUSA Serrano testified

that *he* made this decision.  *See*, ECF 200, Ex. V at p. 2629 ("I opted to charge it as a

conspiracy....  It was sort of– not what you would visualize as your typical conspiracy, but I

opted to go with a conspiracy charge besides the distribution counts....").[10]  Westerfield claims

that certain false reports or the failure to disclose evidence engaged in by defendant Lucas with

respect to the co-defendants can be imputed to Westerfield because the case was charged as a

conspiracy.  However, there is no indication that Lucas had any peresonal ability to tie

Westerfield to the conspiracy as he was simply not involved in Westerfield's investigation.  In

all, plaintiff fails to point to sufficient evidence from which a reasonable juror could conclude

---

[10]     The Court notes that the malicious prosecution and *Brady* claims have different
bases.  The malicious prosecution fails against defendant Lucas because he had no
direct personal involvement in any investigation involving Westerfield.  The
*Brady* claim is based on defendant Lucas's participation in the overall trial and
his purported knowledge of defendant Metcalf's false testimony.

that defendant Lucas could be liable for malicious prosecution.  Accordingly, the United States

cannot be liable since there is no underlying tort.

    2.  *Brady* claim

    A. Standing

Defendants Lucas and Metcalf (for purposes of section two, "defendants") argue that

plaintiff lacks standing to assert a *Brady* claim.  According to defendants, Judge Boyko's

decision in *Price v. Lucas*, Case No. 09 CV 118 at ECF 144, is analogous to the instant case.

There, the court concluded that plaintiff, who "jumped bond" and returned to Mansfield after

pleading guilty in Michigan, suffered no injury in fact from any alleged wrongful search and

seizure because he could not show that "his injuries were proximately caused by a deprivation of

his right to be free from unlawful search and seizure."  According to defendants, this holding

translates to this case because "Westerfield did not spend a single minute in jail as a result of his

conviction on Count 30 of the Mansfield indictment."

Upon review, the Court rejects defendants' standing argument.  As the Sixth Circuit has

already held in this case:

> The fact that Westefield has not suffered wrongful imprisonment does not necessarily
> preclude a showing that defendants' suppression of *Brady* material resulted in a denial of
> Westerfield's constitutional right to a fair trial compensable in damages under 42 U.S.C.
> § 1983 for such injury as he is able to prove–e.g., impairment of reputation, personal
> humiliation, mental anguish and emotional distress, including punitive damages.

*Westerfield v. United States*, 483 Fed.Appx. 950, 955-56 (6th Cir. 2012).  Defendants' standing

argument is simply a rephrasing of an argument already rejected by the Sixth Circuit.

Accordingly, the Court will not dismiss the claim for lack of standing.

    B.  Materiality

Defendant Lucas argues that the withheld evidence, *i.e.*, the fact that defendant Metcalf lied during Nabors's trial, is not "material" for purposes of *Brady* and, therefore, caused no prejudice.  According to Lucas, a wealth of evidence demonstrates that defendant engaged in the conduct alleged in Count 30.  In response, Westerfield points out that the government consented to Westefield's motion to vacate his conviction and expressly indicated that it could not prove its case beyond a reasonable doubt absent defendant Metcalf's testimony.  Therefore, plaintiff argues that the impeachment evidence regarding Metcalf is, by definition, material.

In order to constitute a *Brady* violation, the evidence withheld must be material to guilt.  *See United States v. Phillip*, 948 F.2d 241, 249 (6th Cir. 1991)(*quoting Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987)).  "Evidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *Id.*  "A reasonable probability of a different result is...shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'"  *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)(*quoting United States v. Bagley*, 473 U.S. 667, 678 (1985)).

Upon review, the Court finds that defendant Lucas is not entitled to judgment as a matter of law.  Defendant Lucas points to the following in support of his materiality argument:

1.  Defendant Metcalf did "no more than verify that drugs were found at Ginn's residence" and Westerfield did not dispute this point at trial;

2.  Westerfield testified in a deposition that his argument regarding Count 30 related to not whether drugs were found, but whether the drugs were his;

3.  Defendant Metcalf offered no testimony connecting the drugs to Westerfield;

4.  Defendant Metcalf testified that Westerfield denied any knowledge, connection, or involvement with the drugs;

5.  Other Richland County detectives, including Captain Larry Faith, could have

testified to the seizure of the drugs as he signed the return to the search warrant;

6.  A number of "drug related" and taped telephone calls from Westerfield to Ginn, Ford, and others establishes that Westerfield was guilty of the charged crime;

7.  Ginn and Ford testified about the contents of the shoe box found at Ginn's residence, including that the box contained cocaine; and

8.  Metcalf testified favorably to Westerfield when he indicated that Westerfield's driver's license and a letter were not found in the shoe box.  Rather, they were found at other locations throughout Ginn's residence.

In response, Westerfield argues that the Sixth Circuit already determined that plaintiff suffered prejudice as a result of the failure to disclose defendant Metcalf's admitted perjury. Westerfield claims that the law of the case doctrine applies.  In addition, Westerfield points out that Metcalf was the only witness to testify about finding the drugs.  The government acknowledged that, absent Metcalf's testimony, it would be unable to prove its case beyond a reasonable doubt.  In addition, Westerfield disputes that the government could have substituted the testimony of defendant Metcalf with testimony from defendant Faith.  Westerfield points out that there is no affidavit from defendant Faith indicating that he discovered the drugs.  And, although he signed the return of warrant, the document is insufficient to establish that the police found drugs at Ginn's residence, especially since defendant Metcalf already testified that it was he who found the drugs. Westerfield also argues that the jail tapes in and of themselves are insufficient to support a conviction because, at best, they establish only the *mens rea* of the offense.  Without testimony establishing that drugs were found, there is insufficient evidence to support a conviction.

Upon review, the Court finds that defendant Lucas fails to convince the Court that he is entitled to judgment as a matter of law with regard to materiality.

24

In the appeal on the issue of qualified immunity, the Sixth Circuit held as follows with

regard to materiality:

> [The] attorney for the prosecution—the one most familiar with the nature and strength of
> the government's proofs against Westerfield, the one whose duty it was to obtain a
> conviction if there was sufficient evidence of guilt—expressed the government's view,
> when the falsity of Metcalf's testimony was revealed, that confidence in the Westerfield
> verdict had been fatally undermined. That is, if the falsity of Metcalf's testimony against
> Nabors had been timely disclosed, and Westerfield had been able to use it to impeach
> Metcalf such that the jury was persuaded to reject Metcalf's testimony in its entirety, then
> the prosecution's case would have lacked evidence of the discovery and seizure of the
> actual cocaine, evidence necessary to satisfy an essential element of the charged offense.
> Moreover, the government was not only unwilling to rely on Metcalf's testimony in a
> future prosecution, but also conceded that it lacked the wherewithal, among the other
> available witnesses and evidence, to replace Metcalf's testimony. The government
> therefore consented to vacating Westerfield's cocaine possession conviction and, beyond
> that, requested outright dismissal of the charge.
>
> Defendants Metcalf and Lucas criticize the district court's ruling for its over-reliance on
> the government's position in assessing the materiality of the suppressed information, but
> we find no error. Defendants fail to identify any other witness or evidence that could
> replace Metcalf's testimony in proving the cocaine possession charge. They fail to
> explain why, if the government, on consideration of "all of the available evidence and
> witnesses," lacks confidence in the sufficiency of the evidence to convict Westerfield, an
> objective and impartial juror could not reasonably reach the same conclusion. Based on
> the existing record, we cannot say with confidence that Westerfield received a fair trial in
> the absence of the suppressed evidence. We therefore concur in the district court's
> assessment, at this stage of the proceedings, that Westerfield has made a sufficient
> showing of the materiality of the suppressed information. Further, because defendants'
> failure to disclose the falsity of Metcalf's testimony was not the product of an innocent
> mistake of judgment but a knowing violation of their *Brady* obligation, defendants are
> not entitled to qualified immunity.

*Westerfield v. United States*, 483 Fed.Appx. 950, 955 (6th Cir. June 8, 2012).

Although the Court does not necessarily agree with plaintiff that the Sixth Circuit

conclusively established the satisfaction of the materiality element of the *Brady* claim, the Court

nonetheless finds that defendant Lucas is not entitled to judgment as a matter of law.  The Sixth

Circuit did note that this Court properly relied on the government's position that it could not

25

replace Metcalf's testimony and that the seizure of the drugs was a necessary element of the offense.  Here, defendant Lucas argues that defendant Metcalf's testimony was either not necessary or could have been replaced by other evidence.  The test to determine materiality is whether there exists "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Defendant  Lucas argues that the result of the proceeding would not have been different because both Ginn and Ford testified that the shoe box located at Ginn's residence contained cocaine and this testimony is consistent with taped jailhouse conversations involving these individuals and Westerfield.  In other words, their testimony could substitute for that of defendant Metcalf and, even absent Metcalf's testimony, a conviction would have been obtained.  This Court disagrees.  Testimony about the discovery of drugs and the chain of custody up through and including testing of the drugs is necessary to obtain a conviction for the charged offense.  Defendant Lucas argues that defendant Faith could have testified that he found the drugs, yet the Court has no evidence indicating as such.  Although the return of the search warrant indicates that defendant Faith received the drugs, defendant Metcalf himself testified that he found the drugs.  Since defendant Metcalf acknowledges that he found the drugs and since the government indicates that it would decline to call him to the stand in light of his perjury during the same trial, the Court finds that defendant Lucas is not entitled to judgment as a matter of law on the issue of materiality.

On the other hand, although plaintiff did not seek summary judgment on the issue of materiality, the Court will *sua sponte* grant summary judgment on this issue in favor of Westerfield.  As the Sixth Circuit has noted, in the context of a *Brady* violation, the issue of materiality is a mixed question of fact and law.  *See, United States v. Phillip*, 948 F.2d 241, 250

26

(6th Cir. 1991)("materiality under *Brady* presents a mixed question of law and fact").  Here, however, there are no disputed facts.   The Court found that defendant Metcalf's testimony was necessary for a conviction and that no testimony existed that could have substituted for the discovery of the actual drugs.  As such, the sole issue to be determined is legal in nature.  For the reasons stated above, the Court finds that plaintiff satisfies the materiality standard for a *Brady* claim.

Having so concluded, the sole issue remaining for trial is whether defendant Lucas knew of defendant Metcalf's perjury such that he was obligated to disclose the information to Westerfield.  *Elkins v. Summit County*, 615 F.3d 671 (6th Cir. 2010)(assuming for purposes of qualified immunity that officers knew of exculpatory memorandum).

C. Testimonial immunity

Defendant Metcalf argues that he is entitled to absolute immunity with respect to the *Brady* claim because it is premised on a testimonial act.  In support of his argument, defendant Metcalf relies on *Rehberg v. Paulk*, 132 S.Ct. 1497, 1505 (2012)(noting that in *Briscoe*, the Supreme Court recognized that "a trial witness has absolute immunity with respect to any claim [including a Section 1983 claim] based on the witness' testimony").  According to defendant Metcalf, he is entitled to absolute immunity in this case because the *Brady* claim directly relates to his in-court testimony.   Plaintiff does not respond to this argument in any fashion.  Based on *Rehberg* and *Briscoe*, and because plaintiff fails to argue that these cases do not foreclose liability, the Court finds that defendant Metcalf is entitled to absolute immunity with respect to plaintiff's *Brady* claim.

D.  Sufficiency of the complaint

27

Having disposed of all of the remaining claims against defendant Metcalf, the Court need not reach his argument that the complaint lacks sufficient specificity.

**CONCLUSION**

For the foregoing reasons, the motions filed by the United States (Doc. 186), Charles Metcalf (Doc. 187), Larry Faith and Matthew Mayer (Doc. 188), and Richland County (Doc. 189) are granted in their entireties.  The motion filed by defendant Lucas (Doc. 184) is GRANTED in PART and DENIED in PART.  The sole remaining claim in this case is plaintiff's *Brady* claim as it relates to Count 30 filed against defendant Lucas.

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 10/2/13

28